## KING et al. v. GUERRA. (No. 7830.)*

Court of Civil Appeals of Texas. San Antonio. Nov. 2, 1927.

**1. Municipal corporations ⬤≈85—Commissioners acting singly and individually could not bind city nor themselves as board to approve permit.**

Board of commissioners of city acting individually at different times and places could not bind themselves in their official capacity, nor the board of city commissioners as a body, nor the city to approve a permit authorizing operation of an undertaking establishment within city.

**2. Nuisance ⬤≈3(7)—Undertaking business is not nuisance per se.**

The undertaking business is not a nuisance per se in any situation.

**3. Nuisance ⬤≈3(7)—If undertaking establishment becomes nuisance, operation thereof may be restrained.**

While undertaking business is not a nuisance per se, yet, where in its operation in a residential neighborhood it becomes a nuisance in fact, equity will restrain such business by injunction.

**4. Nuisance ⬤≈33—To suppress nuisance of undertaking establishment, plaintiffs must show business constitutes nuisance in fact.**

In case of suppression of nuisance of operation of an undertaking establishment by injunction, burden rests on plaintiffs to show by affirmative evidence that business thereof constitutes a nuisance in fact.

**5. Mandamus ⬤≈168(2)—In mandamus for permit for undertaking establishment, burden rested on plaintiff to show no issuable facts existed authorizing commissioners to exercise discretion.**

In mandamus to compel board of commissioners of city to approve and issue permit for undertaking establishment within city, burden rested on plaintiff to show that no conclusive or issuable facts or conditions existed which authorized commissioners to exercise discretion under ordinance in determining matter of purely governmental policy.

**6. Mandamus ⬤≈28, 72—Mandamus will not lie to control or review exercise of powers by courts, boards, or officers, when discretion is involved.**

Mandamus will not lie to control or review exercise of powers granted by law to court, board, or officer, when act complained of calls for or involves exercise of discretion.

**7. Mandamus ⬤≈72—Mandamus cannot be invoked to require exercise of discretion in particular way.**

Mandamus cannot be invoked to require exercise of discretion in a particular way.

**8. Mandamus ⬤≈72—Mandamus lies to correct gross abuse of discretion by boards or officers where such abuse is so shown as to establish fraud or arbitrary decision.**

Mandamus will lie to correct gross abuse of discretion by boards or officers intrusted therewith when such abuse is so clearly shown as to establish fact that in performing act complained of officers acted wholly through fraud, caprice, or by purely arbitrary decision, and without reason.

**9. Mandamus ⬤≈72—Mandamus lies to correct gross abuse of discretion only where board acts without supporting facts.**

Mandamus lies to correct gross abuse of discretion by boards who. act wholly through fraud, caprice, or by purely arbitrary decision and without reason only in cases in which offending board acts in absence of any fact or condition supporting, or tending to support, its conclusion in matter acted on.

**10. Mandamus ⬤≈172—In matters involving discretion, judicial inquiry is limited to whether there can be controversy over facts on which officers acted.**

In mandamus to correct gross abuse of discretion by boards or officers intrusted therewith, judicial function is limited to inquiry as to whether there was any controversy over facts or conditions on which board acted or which it could properly consider.

**11. Mandamus ⬤≈172—As regards exercise of discretion, if there is doubt as to existence of facts on which officers acted, their action cannot be disturbed.**

If there is reasonable doubt concerning existence or nonexistence of facts or conditions on which board or officers intrusted with discretion acted, courts are powerless to revise or disturb board's action.

**12. Mandamus ⬤≈87—If evidence raises fact issue on which commissioners refused permit for undertaking establishment, their finding could not be substituted by jury's finding.**

As to whether undertaking establishments could be established in a given locality, if evidence raised issue of facts on which board refused permit, then finding of the board in exercise of discretion was conclusive and cannot be substituted by a finding of jury on issue thereof.

**13. Mandamus ⬤≈87—Discretion of city commissioners in denying permit for undertaking establishment cannot be controlled where there was fact controversy.**

Discretion of board of commissioners of city in refusing permit to establish undertaking establishment in residential district cannot be controlled where evidence showed that commissioners did not act beyond fair discretion after investigation of facts and conditions over which there was a controversy.

---

⬤≈For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused March 7, 1928.

On Motion for Rehearing.

**14. Mandamus ⬦⬦168(2)—Burden rested on plaintiff to negative facts authorizing commissioners' refusal to take action sought to be forced on them.**

In mandamus to compel board of commissioners to issue permit to operate undertaking establishment in residential portion of city, burden rested on plaintiff to negative every fact which would have authorized board's refusal to take action sought to be forced on them.

**15. Mandamus ⬦⬦168(2)—Commissioners were not required to prove fact authorizing them to refuse permit for undertaking establishment.**

In mandamus to compel board of commissioners to issue permit for undertaking establishment, commissioners were not required to allege and prove any fact which authorized or prompted them to refuse permit.

**16. Mandamus ⬦⬦187(9)—Finding of court and jury as to condition surrounding undertaking establishment was immaterial where permit therefor was within discretion of commissioners.**

Where issuance of permit for an undertaking establishment within residential portion of city was within discretion of board of commissioners after hearing facts thereon, finding of court and jury on issues of fact in mandamus proceeding relating to conditions which led commissioners to deny permit was immaterial.

**17. Appeal and error ⬦⬦1001(1)—Findings of jury on fact issue whether undertaking establishment would constitute nuisance, supported by material evidence, are binding on appeal.**

Findings of jury on fact issues as to whether operation of undertaking establishment in city would constitute a nuisance, supported by material evidence, are binding on appeal.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Mandamus by Henry A. Guerra against Dr. W. A. King and others, in which third parties intervened and prayed for injunction against plaintiff. From a judgment granting writ of mandamus and denying injunction, defendants and interveners appeal. Judgment set aside, judgment refusing injunction affirmed, judgment granting mandamus reversed, and judgment rendered refusing writ.

Joseph Ryan, T. D. Cobbs, Jr., and Martin J. Arnold, all of San Antonio, for appellants.

George M. Clifton and Carl Wright Johnson, both of San Antonio, for appellee.

SMITH, J.  The district court, in response to jury findings, granted a writ of mandamus requiring the board of commissioners of the city of San Antonio and its health officer to approve and issue a permit authorizing appellee to construct and operate an undertaking establishment upon premises purchased by appellee for that purpose, and situated on Quincy street, between San Pedro avenue and Jackson street, in said city.

It appears that previous to a formal presentation of the matter to the city commission appellee approached the mayor and two of the commissioners, separately and privately, for the purpose of ascertaining their probable attitude towards appellee's project. The mayor was approached while in a public barber shop, one of the commissioners while passing along a corridor in the city hall,. and another while ill at his residence. Upon these occasions, according to appellee's testimony, each of these officials, in one form and degree or another, expressed himself favorably towards appellee's project or the granting of a permit therefor. But when appellee's application for a permit was formally presented to the city commission, while in open session, the commissioners, having in the meantime investigated the matter, unanimously rejected the application, and the refusal thereof was duly entered as the official act of that body. The city health officer whose approval of the application was requisite to the issuance of the permit, declined to grant such approval. The permit having been refused, appellee sought and procured the writ of mandamus requiring its issuance. A large number of the residents of the locality in which appellee seeks to do business joined in a protest, filed with the city commission, against the approval of the requested permit, and intervened in this suit to defeat the mandamus proceeding. Both the city and the interveners have appealed.

[1] It is true, as a matter of course, that the friendly expressions obtained from the mayor and two commissioners, in private conversations—whether made casually, upon impulses of the moment and without definite knowledge or consideration of the true facts of the proposed projects, or whether given deliberately and after mature consideration of all the ascertainable facts—can have no bearing upon the case. Even had they been so disposed, which they deny is the case, those officials, acting singly, individually, and separately, at different places and times and upon different occasions, could not bind themselves in their official capacity, nor the board of city commissioners as a body, nor the government of the city, nor any of its departments. Those expressions, whether of casually friendly acquiescence, or of solemn promises, can have no more bearing upon the official matter of the issuance of the permit than would similar expressions from any private citizen wholly disconnected from the city government.

The order granting the writ of mandamus. was based upon general findings of the jury that in rejecting appellee's application for

a permit the board of commissioners acted capriciously and arbitrarily, and upon specific findings, in effect, that the proposed site is within a "business district," not "thickly populated," and that a proper operation of appellee's undertaking establishment would not "materially endanger the health of any of the inhabitants of said district, by reason of infectious or contagious diseases," would not "materially endanger the comfort of the inhabitants"; that it is reasonably possible for appellee to operate his business in such manner as will not endanger the health of the persons occupying any of the property of the interveners because of contagious or infectious diseases or dangerous germs, or result in depreciation of the value of interveners' property.

The three adjoining blocks on the west, northwest, and north of the proposed site are occupied exclusively by private residences and boarding and apartment houses; the adjoining block on the northeast is similarly occupied, except for a gasoline filling station on the southwest corner; the adjoining block on the east, and the block in which the proposed site is situated, are occupied indiscriminately, in about equal proportions, by business and dwelling houses, some of the latter being used as boarding and rooming houses; the adjoining block on the south is largely occupied by business concerns, and merges into a strictly business section extending from there south into the heart of the business district. Within a radius of two or three blocks from the proposed site are located three churches, three hospitals, and one of the two public senior high schools of the city, attended by more than 1,400 pupils. San Pedro avenue, on which the proposed site abuts, is traversed by a double track street car line, in one of the "most important thoroughfares" of the city, and is but one of at least five streets which converge into a small triangle located within a block of the proposed site, and into which at least two street car lines converge. These conditions create a traffic problem which is necessarily inferred from the facts shown by plats in the record, although not elaborated upon in the evidence.

The record shows that in the operation of the proposed undertaking business the dead bodies of human beings will be carried to appellee's establishment and there "washed," embalmed, and otherwise made ready for burial, and either returned to the place of death, or moved direct to the grave. In the course of appellee's business, now operated at another location in the city, he conducts, on an average, one funeral each day. In the ordinary process, when informed of a death and a desire for his services, appellee dispatches his "dead wagon" to the place of death, where his employees in charge of the wagon receive the body, wrap it in a sheet, place it in a basket, and remove it to the wagon, in which it is transported to appellee's place of business. There it is placed in the dead or embalming room, is "washed," embalmed, prepared for burial, and taken thence in funeral procession directly to the grave, or returned to the place of death, where, in such case, the funeral services are held, and whence the body is carried in procession to the grave; when the body is carried directly from appellee's place to the grave, the funeral services are held in the chapel of appellee's establishment. We pretermit the details of the melancholy processes through which the bodies are received, transported, and made ready for burial, which are dwelt upon in morbid detail in the evidence; and of the relaxations of the bodies during these processes; and of the nauseous conditions preceding and attending the embalming process, which, if this permit be granted, would take place within 15 or 20 feet of the kitchen of an adjacent boarding house in which 15 to 25 people eat and sleep and live the only homes lives vouchsafed them by their conditions, and in close proximity to other and even larger boarding and rooming houses.

From the record disclosed in the foregoing statement arises the controlling question in the case, Shall the official action of the board of city commissioners in refusing the permit be set aside, and the permit issue in spite of their adverse action thereon? As will be hereafter seen, the question may be narrowed to this inquiry, Shall the finding of the board upon issuable facts governing them in a matter intrusted by law to their discretion in a purely governmental function be set aside and a finding of a jury substituted therefor?

[2, 3] The undertaking business is not only lawful, but it is a necessary business. But it is of such nature as to render it subject to regulation under the police powers inherent in municipalities; and, although such business cannot be regarded as a nuisance per se in any situation, yet where it has been sought to establish or operate it in a residential neighborhood, and thus encroach upon and disturb or impair the repose, the comfort, and the freedom of those dwelling in the neighborhood, depreciate the value of their property, depress their spirits, or weaken their power to resist disease, it becomes a nuisance in fact, and courts of equity will restrain such business by injunction. Saier v. Joy, 198 Mich. 295, 164 N. W. 507, L. R. A. 1918A, 825; Meagher v. Kessler, 147 Minn. 182, 179 N. W. 732; Beisel v. Crosby, 104 Neb. 643, 178 N. W. 272; Densmore v. Evergreen Camp, 61 Wash. 230, 112 P. 255, 31 L. R. A. (N. S.) 608, Ann. Cas. 1912B, 1206; Goodrich v. Starrett, 108 Wash. 437, 184 P. 220; Streett v. Marshall (Mo.

Sup.) 291 S. W. 494; Osborn v. Shreveport; 143 La. 932, 79 So. 542, 3 A. L. R. 955.

[4, 5] But this action is not one brought by the city officials for the suppression of a nuisance by injunction, and the cause is not determinable by the rules applicable to such action. In that case the burden would rest upon those complaining to show by affirmative evidence that the business would constitute a nuisance in fact. Here, however, the rule is quite different, as will be seen. For, instead of the burden being upon the city government, the extraordinary burden rests upon appellee to show that no conclusive, or even controversial or issuable, facts or conditions existed which would authorize the governing board of the municipality to exercise the discretion confided to it by a valid ordinance in determining a matter of purely governmental policy.

The ordinance under which appellee sought the requested permit provides that it shall be unlawful for any person to use any building within a specifically described section of the city as a "morgue or dead room to hold deceased human bodies, or to receive the same for burial or shipment," and further provides that:

"In any other portion of the city, except the streets or plazas above mentioned, any undertaker desiring to establish a dead or embalming room in connection with his undertaking business, the location of such room and business must be approved by the city physician and city council; and the mayor, upon such approval, shall issue permit to such person or firm desiring to establish such room."

It is conceded by all parties that the ordinance is valid, and lawfully delegates to the municipal authorities the power to grant or refuse the permit, within their discretion.

[6, 7] It is the settled general rule, in this as well as in other jurisdictions, that mandamus will not lie to control or review the exercise of the powers granted by law to "any court, board or officer," when the act complained of calls for or involves the exercise of discretion upon the part of the tribunal or officer. Mandamus may be invoked in some cases to compel the exercise of discretion, but not to require its exercise in a particular way. 26 Cyc. 158 et seq.; Com'r v. Smith, 5 Tex. 471; Arberry v. Beavers, 6 Tex. 457, 55 Am. Dec. 791; Meyer v. Carolan, 9 Tex. 250; Riggins v. Richards (Tex. Civ. App.) 79 S. W. 84, and authorities there cited. It was said by Judge Wheeler, in the Arberry Case, that:

Mandamus "lies to compel public officers and courts of inferior jurisdiction to proceed to do those acts which clearly appertain to their duty. But it does not lie to instruct them as to the manner in which they shall discharge a duty which involves the exercise of discretion or judgment. The distinction seems to be that if the inferior tribunal has jurisdiction, and refuses to act or to entertain the question for its decision, in cases where the law enjoins upon it to do the act required, or if the act be merely ministerial in its character, obedience to the law will be enforced by *mandamus* where no other legal remedy exists. But if the act to be performed involves the exercise of judgment, or if the subordinate public agent has a discretion in regard to the matter within his cognizance, and proceeds to exercise it according to the authority conferred by law, the superior court cannot lawfully interfere to control or govern that judgment or discretion by *mandamus.*"

The distinction has been clearly drawn between a ministerial act, which may be reviewed and directed by the courts, and an act requiring the exercise of judgment or discretion, which the courts will not review or control. In the case of Com'r v. Smith, supra, it is said:

"It has been settled, however, by a series of decisions, in the Supreme Court of the United States, that a mandamus will issue to an officer of the government, only when the duty to be performed is ministerial in its character; but that where there is imposed upon the officer, by law, a duty requiring the exercise of judgment or discretion, a *mandamus* will not lie to control the exercise of that discretion. * * * Respecting the general rule, there does not appear to have been any question; but the difficulty has been in making its application to particular cases, and in determining in such cases what acts are to be considered as merely ministerial and what not. The distinction between ministerial and judicial and other official acts seems to be that, where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment * * * in determining whether the duty exists, it is not to be deemed merely ministerial."

To which Judge Lipscomb, adds, in Meyer v. Carolan, supra:

"There can be no doubt, that the settled doctrine of this court is, that, if the officer is required to exercise his judgment or discretion in the discharge of any portion of his duties, so far as relates to those duties, the *mandamus* will not lie to control such exercise of his judgment or discretion."

[8] There exists this exception to the rule stated, that a mandamus will lie to correct a gross abuse of discretion upon the part of boards or officers intrusted with such discretion, when such abuse is so clearly shown as to establish the fact that in performing the act complained of the officers acted wholly through fraud, caprice, or by a purely arbitrary decision, and without reason. 26 Cyc. 161; Meyer v. Carolan, supra; Riggins v. City of Waco, 100 Tex. 32, 93 S. W. 426; Riggins v. Richards (Tex. Civ. App.) 79 S. W. 84.

[9-11] But this exception is restricted in its application to cases in which the offending board acts in the absence of any fact or condition supporting or tending to support its

conclusion in the matter acted upon. The judicial function in the excepted cases is limited to the inquiry as to whether there can be any controversy over the facts or conditions upon which the board acted, or which it could properly take into consideration in its deliberations. If such controversy is possible, if there can be any reasonable doubt concerning the existence or nonexistence of those facts or conditions or their effect upon the public good, then the courts are quite powerless to revise or disturb the action of the board. Sansom v. Mercer, 68 Tex. 492, 5 S. W. 62, 2 Am. St. Rep. 505; Riggins v. Richards, supra. To paraphrase the language of Judge Gaines in the Sansom Case:

"If there is any controversy as to the existence of the facts upon which the board denied the requested permit, the function of the board was discretionary, and it cannot be compelled to grant the permit."

Judge Key said in the Riggins Case that:

"Human wisdom has never devised a system of government that did not vest final authority in one or more persons; and when that authority involves discretion, and has been exercised, the courts are powerless to grant relief, however unwisely or unjustly it may have been done." 79 S. W. 86.

[12] Under the provisions of the ordinance granting the power to the board of city commissioners to determine whether or not appellee should be permitted to establish his business in a given locality, no mode of determining the matter was prescribed. No facts or conditions are prescribed in that ordinance to guide the commissioners in their determination; the whole question was left to the discretion of the commissioners, who were elected by the voters of the city for that and other purposes relating to their office. It was their right and duty in determining the matter to consider any or every fact or condition bearing upon the project as it related to the health, peace of mind, convenience, comfort, and welfare of the inhabitants of the vicinity in which the business was proposed to be located; to consider what effect, if any, such location may have upon property values in that vicinity with references to the uses now or hereafter to be made of that property; to consider what effect, if any, the location and operation of the proposed business may have upon nearby churches and schools, upon traffic conditions, as well as any and all other considerations which properly enter into the administration of municipal governments. In short, it was the right and duty of the commissioners to consider and determine the matter in such manner as in their judgment and discretion, fairly exercised, would best protect the health and property and promote the safety, peace, comfort, convenience, and welfare of the inhabitants of the city, and of that section of the

city in particular. And in the exercise of this purely governmental function the commissioners were the triers of the facts establishing the conditions which they considered in exercising that function, and of the sufficiency of those conditions to warrant their action thereon.

So, if it can be said that the evidence in this case raised the issue of the truth of any of the material facts upon which the board refused the permit, then a sufficient answer is that the board were the triers of those facts, and their finding was conclusive and may not be substituted by the finding of a jury. Riggins v. Richards, and Sansom v. Mercer, both heretofore cited.

[13] The evidence in this record not only fails to show that the commissioners acted beyond their fair discretion and judgment, or were moved solely through caprice and arbitrariness, but it shows that they investigated the facts and conditions relating to the matter presented, and determined it only upon those facts and conditions. To say the least of it, the evidence raises a controversy over the existence of those facts and conditions. The law, conceded to be valid in the form of this ordinance, places upon the commissioners the responsibility of determining that controversy, and having determined it under that law, their decision was final and quite beyond the reach of the courts. Again paraphrasing the language of the Supreme Court, this time in the Riggins Case, which is precisely in point in principle:

"Should we say that the commissioners were mistaken in their determination of the issue raised by the facts and conditions disclosed by the record here, we would simply be substituting our judgment for that of the council, to whom the law intrusts the determination of such matters."

The parties have cited many authorities in cases of injunction to suppress nuisances, and of the validity of regulatory statutes and ordinances. Such authorities are not in point at all. The questions of nuisances, per se or in fact, and of the validity of regulatory statutes and ordinances are not involved here. The only question here is of the validity of the discretionary act of the board of commissioners done in pursuance of authority granted them under a concededly valid law. The record presents nothing which warrants the interference of a court with the action of the board, or the substitution of a jury finding for that of the commissioners in a purely governmental matter.

The order granting the writ of mandamus is reversed, and judgment will be here rendered that the writ be denied.

### On Motion for Rehearing.

[14] This being a mandamus proceeding, the burden rested upon the party seeking that extraordinary relief to negative, by af-

firmative allegation and proof, every fact or condition which would have authorized the action of the board of commissioners in refusing to take the action now sought to be forced upon them.

[15] So, upon the other hand, the board was under no requirement, in resisting the effort to force them to take the action sought, to allege or prove any fact which would have authorized them, or which prompted them, to refuse to take such action. These observations are made in deference to appellee's complaint that the city officials did not plead some of the matters upon which they rely to defeat appellee's petition for mandamus.

Nor is it necessary for this court to determine, with reference to the action for mandamus, whether there was or was not sufficient evidence to warrant the jury's findings upon the special issues, other than special issues Nos. 1 and 2. In response to special issues Nos. 1 and 2 the jury found that the city officials' action in refusing to issue the requested permit to appellee was arbitrarary and capricious; we held, and now reiterate, that such findings were wholly without evidence to support them.

We may say that the evidence conflicted · upon the remaining issues, and the jury's findings thereon were sufficient to bind the court for the purpose of denying the injunction sought by the interveners to restrain appellee from establishing his business at the location in dispute. But those findings were not sufficient to warrant the granting of the writ of mandamus requiring the public authorities, charged by valid law with the duty of determining the matter, to issue the requested permit. The law delegates to the public authorities, and not to courts or juries, the power and duty of determining the sufficiency of issuable facts in the exercise of a purely governmental function, such as this. The only limitation resting upon the city lawmaking body is that they shall not exercise their power in any case solely through caprice or arbitrariness. Any other rule would ultimately operate to delegate the exercise of those powers to juries, in usurpation of the prerogative confided by law in public officials elected by the people for the very purpose of exercising those powers.

[16] Appellee questions the accuracy of the findings of this court in some of the details of the conditions and situation surrounding the proposed location of appellee's plant. We have again gone over the evidence in these matters, and have concluded that the statement of the case in the original opinion is substantially correct, and see no reason for changing that statement. Moreover, the findings of this court upon the specific issues of fact as they relate to the conditions and considerations which led the commissioners to deny the requested permit are immaterial

just as the jury's findings thereon are immaterial, since those issues, in so far as they relate to the health, welfare, and safety of the inhabitants of the city, are determinable by the governing board of the city, and not by courts or juries.

[17] The findings of the jury, however, upon issues of fact bearing upon the injunction sought by the interveners in the case, are binding in so far as they were supported by any material evidence. The question of whether the proposed establishment and operation of appellee's plant would constitute a nuisance was one of fact for the jury. This matter was not disposed of in the original opinion. We now hold that under the jury's findings the trial court correctly denied the injunction·by which the interveners sought to restrain appellee from establishing and operating his proposed plant. To that extent the judgment of the trial court must be affirmed.

Accordingly, appellee's motion will be granted in part, and it is ordered that the judgment heretofore entered in this court be set aside; that the judgment of the trial court refusing said injunction be affirmed; that the judgment of said court granting the writ of mandamus be reversed and judgment here rendered refusing said writ; that the costs incurred by interveners in this court and in the trial court be taxed against said interveners; and that appellee pay all other costs in both courts.