## Miner et al. v. Loomis et al.

*Neil Chrisman* and *Charles H. Miner, Jr.*, for plaintiffs.

*Peter J. McCormick, Hopkin T. Rowlands* and *Stephen A. Teller*, for defendants.

VALENTINE, J., December 19, 1935. — Plaintiffs procured a preliminary injunction restraining the defendants from using the property at 174 South Franklin Street, Wilkes-Barre, as a funeral home or establishment.

The proposed location is in the heart of the best residential section of the city. A small portion of Franklin Street, which is adjacent to Market Street, lies in the business section of the city, but the remainder of the street, including the portion on which the property is located, is exclusively residential. No business or commercial establishment of any kind is located on said street within a distance of over two blocks from the property, but such portion of the street is composed exclusively of residences. A number of medical doctors who reside on this portion of the street have their offices in their homes, but it is manifest that such fact does not change the use of the buildings for residential purposes or give a commercial aspect to the neighborhood, nor is the situation affected by the fact that Main Street, located one block (about 500 feet) distant from Franklin

Street and running parallel thereto, is a business street: Burke et al. v. Hollinger, 296 Pa. 510; Burke et al. v. Bassett et al., 296 Pa. 524; Nesbitt Memorial Hospital et al. v. Piccone et al., 27 Luz. L. R. Rep. 461. The test is as to the immediate neighborhood and not remote districts: Krocker et al. v. Westmoreland Planing Mill Co., 274 Pa. 143; Burke et al. v. Hollinger, supra, at page 520. The district herein involved is purely and exclusively residential. True, a tea room of a refined type had been conducted in the house in question for several years but this in nowise impaired the residential character of the street. Moreover the condition of the neighborhood at the time of the hearing is controlling. The operation of the tea room had been discontinued prior to said time, and we can discover nothing in the case that would deprive the residents of their right to protection against the establishment of commercial enterprises.

The defendant Snowden contemplates using said building as a funeral home. The room at the rear on the McLean side of the residence is to be used as a private morgue or preparing room and will have facilities for handling three bodies at a time. Bodies will be taken to and from the building through the side door near the rear of the building. Two rooms on the second floor are to be utilized for the display of caskets. A copper sign four feet long, twenty inches high, and erected approximately 3½ feet from the ground is to be installed in the front of the yard between the building and the driveway. This sign will bear the name of the proprietor and the words "Funeral Home" and will be electrically lighted from dark until about 11 p.m.

The establishing of a funeral home at said location would result in dead bodies being taken thereto for the purpose of autopsy and embalming, frequent funerals being conducted therefrom, and would bring about the frequent appearance of hearses and other funeral equipment. The uncontradicted testimony of the medical experts called by the plaintiffs is to the effect that the con-

duct of such business, in the manner contemplated, would affect a normal person deleteriously, cause mental irritation and have a bad effect mentally upon children of impressionable age, and would tend to lower a person's general resistance and health by reason of continual irritation and worry. Real estate experts testified that the establishment of a funeral home as described by defendants' witnesses would cause a substantial depreciation in the market value of real estate in the neighborhood, and we have no hesitation in accepting such testimony as correct.

On this showing, are plaintiffs entitled to injunctive relief? Equitable jurisdiction must be predicated on an injurious invasion of a fixed and determined property right: Pennsylvania Co., etc., et al. v. Sun Co., 290 Pa. 404, 409. By injury to property is meant something materially affecting its capacity for ordinary use and enjoyment: Sparhawk et al. v. The Union Passenger Ry. Co. et al., 54 Pa. 401; Evans v. Reading Chemical Fertilizing Co., Ltd., 160 Pa. 209, 219; Pennsylvania Co., etc., et al. v. Sun Co., supra, page 409. That an individual may be affected only in his tastes, his personal comfort or pleasure is not enough to warrant relief: Robb v. Carnegie Brothers & Co., 145 Pa. 324, 340, but when the act complained of not only effects discomfort to the body but becomes a resultant injury to property or vice versa, there is ground for equity interference: Pennsylvania Co., etc., et al. v. Sun Co., supra, page 409.

A funeral home, being a lawful business, is not a nuisance per se: 46 C. J. 726, sec. 293; but by reason of surrounding circumstances may become one. It may constitute a nuisance by reason of its being located in a residential district: 46 C. J., supra. Although the authorities are in conflict as to the latter proposition, the great weight of authority is to the effect that the establishment and operation of an undertaking business and funeral home, of the type here contemplated, in a purely residential district which would cause a depressed feeling to the

families in the immediate neighborhood, constantly remind them of death, appreciably impair their happiness, weaken their power to resist disease and depreciate the value of their properties, constitutes a nuisance: Higgins et al. v. Bloch et al., 216 Ala. 153, 112 So. 739; Laughlin, Wood & Co. v. Cooney et al., 220 Ala. 556, 126 So. 864; White et al. v. Luquire Funeral Home et al., 221 Ala. 440, 129 So. 84; Fentress v. Sicard, 181 Ark. 173, 25 S. W. (2d) 18; Harris et al. v. Sutton et al., 168 Ga. 565, 148 S. E. 403; Albright et al. v. Crim et al., 97 Ind. App. 388, 185 N. E. 304; Hatcher et al. v. Hitchcock, 129 Kan. 88, 281 Pac. 869; Weinmann et al. v. Miles, 134 Kan. 107, 4 P. (2d) 437; Lewis, Inc., v. Mayor, etc., of Baltimore et al., 164 Md. 146, 164 Atl. 220, 226; Dillon v. Moran, 237 Mich. 130, 211 N. W. 67; Street et al. v. Marshall, Jr., et al., 316 Mo. 698, 291 S. W. 494; Arthur et al. v. Virkler et ux., 144 Misc. 483, 258 N. Y. Supp. 886; Meldahl et al. v. Holberg, 55 N. D. 523, 214 N. W. 802; Jordon et al. v. Nesmith et al., 132 Okla. 226, 269 Pac. 1096; King et al. v. Guerra, (Court of Civil Appeals of Texas 1927) 1 S. W. (2d) 373; Blackburn et al. v. Bishop et ux., (Court of Civil Appeals of Texas 1927) 299 S. W. 264; Bragg et al. v. Ives, 149 Va. 482, 140 S. E. 656; Haan et al. v. Heath et al., 161 Wash. 128, 296 Pac. 816; Cunningham et al. v. Miller et ux., 178 Wis. 22, 189 N. W. 531.

3 Cooley on Torts (4th ed.) 180, sec. 435, states the rule as follows:

"An undertaking establishment is not a nuisance *per se,* and by some courts it is held that even when located in an exclusively residential district, with the result that, because of sentimental repugnance on the part of those who might reside near it, property values in the vicinity would depreciate, such establishment would not be enjoined. By what appears to be the weight of modern authority, however, it is held that the location of such a business in a residential district is sufficiently objectionable to make it a nuisance. Thus it has been stated: The

inherent nature of an undertaking establishment 'is such that, if located in a residential district, it will inevitably create an atmosphere detrimental to the use and enjoyment of residence property, produce material annoyance and inconvenience to the occupants of adjacent dwellings, and render them physically uncomfortable, and in the absence of a strong showing of public necessity, its location in such a district should not be permitted over the protests of those who would be materially injured thereby.' "

In Arthur et al. v. Virkler et ux., supra, Lewis, J., in the course of a well-considered and exhaustive opinion says:

"As I view the record, the question is presented whether the power of this court in equity may be invoked to restrain the defendants from operating an undertaking business and ambulance service in a strictly residential district when the only proof of resulting injury to the plaintiffs is the mental annoyance or depressing effect upon them and the members of their households, a loss of comfort and enjoyment in their residence properties and a diminution in the rental value thereof. . . . The injury is not one which is felt only by a hypersensitive person. The normal man is affected by the consciousness of death. It is not peculiar to the person of overwrought nerves or delicate taste to feel a physical reaction in the presence of death or serious injury. True, some will react to greater extremes than others, but the important fact to us in the consideration of this question is that the normal, reasonable man feels a physical reaction in such presence. If the occasion is near his home, the quiet enjoyment there, to which he is legally entitled, is adversely affected. It follows that when the symbols of death, which are the stock in trade of an undertaker, are frequently brought by the defendants before the eyes of the plaintiffs the true value of plaintiffs' properties as homes, as places of repose and comfort, will diminish.

"It is not fanciful nor imaginary to conclude that a

diminution in property values occurs by reason of the close proximity of the activities of an undertaker or ambulance service in disposing of the dead or injured. It is a fact which normal persons will recognize; it is real and substantial."

In Albright et al. v. Crim et al., supra, it was said at page 399:

". . . the depreciation in the value of the property shown and the constant depressing influence the maintenance of this undertaking establishment will have upon the appellees, and the resultant annoyance and discomfort, all tending to destroy their peace of mind and happiness, constitute an irreparable injury within the meaning of our law."

In Densmore et al. v. Evergreen Camp No. 147, etc., et al., 61 Wash. 230, 112 Pac. 255, the court said:

". . . it may be accepted as within the common knowledge of man, that the immediate presence of those mute reminders of mortality, the hearse, the chapel, the taking in and carrying out of bodies, the knowledge that within a few feet of the windows of one's dwelling house where the family sleep and eat and spend their leisure hours, autopsies are going on, that the dead are there, cannot help but have a depressing effect upon the mind of the average person . . . that noxious odors, gases, especially those arising from the deodorants used in cleansing the premises, would permeate the homes . . . that there is danger of infection and contagion from the proximity of the morgue, and the possibility of flies passing from one place to the other."

In Saier v. Joy, 198 Mich. 295, 164 N. W. 507, the court said at page 299:

"We think it requires no deep research in psychology to reach the conclusion that a constant reminder of death has a depressing influence upon the normal person. Cheerful surroundings are conducive to recovery for one suffering from disease, and cheerful surroundings are conducive to the maintenance of vigorous health in the

normal person. Mental depression, horror, and dread lower the vitality, rendering one more susceptible to disease, and reduce the power of resistance. There is an abundance of testimony in this record confirmatory of this, and it is a matter of common knowledge. The constant going and coming of the hearse . . . the not infrequent taking in and out of dead bodies; the occasional funeral with its mourners and funereal airs, held in the part of the house designated for a chapel; the unknown dead in the morgue, and the visits of relatives seeking to identify them; the thought of autopsies, of embalming; the dread, or horror, or thought, that the dead are or may be lying in the house next door, a morgue; the dread of communicable disease, not well founded, as we have seen, but nevertheless present in the mind of the normal layman—all of these are conducive to depression of the normal person; each of these is a constant reminder of mortality. These constant reminders, this depression of mind, deprive the home of that comfort and repose to which its owner is entitled."

Counsel for the defendants urge that the decision in McCann et al. v. McCabe, 79 Pitts. 421, in effect establishes the rule in this State that a funeral home, although located in a residential neighborhood, is not a nuisance per se. We do not think such a conclusion is warranted. The district involved in the McCann case bears no analogy to the section of Wilkes-Barre now under consideration. No embalming or preparation of bodies for interment was done in the building occupied by the defendant, nor was there any sign or other indication that the premises were used as a funeral home. Moreover the court determined as a fact that the premises were not being used for general undertaking purposes or as a funeral home in the professional acceptance of that term.

Our views upon this question have been admirably expressed by the court in Bragg et al. v. Ives, supra, at page 495, in the following language:

"We agree with those decisions, however, which hold

that when an undertaking establishment invades a community which has previously been strictly residential, and the character of the business, or the manner in which it is conducted, is such as will naturally depress the spirits and sensibilities of those living in close proximity to it, to the extent of weakening their power to resist disease and destroying the comfort, repose and enjoyment of their homes, making them less desirable and thereby materially depreciating their value, then such business is a nuisance to those so affected by it. It is true that the objection to the business must be something more than imaginary, or an individual aversion to the proximity of the establishment and to the thought of death superinduced by its nearness and the activities carried on in connection with it. The annoyance complained of must be something real, substantial and tangible—one that affects the normal person, not the overnervous or supersensitive, nor yet the hardened and stoical, but the ordinary man, with ordinary sensibilities, tastes and feelings. The maintenance of an undertaking establishment under circumstances that produce such a result upon such a person goes beyond mere mental disturbance—it involves the physical enjoyment and comfort of the home, with which no business, however lawful and necessary, has the right to interfere."

Now, December 19, 1935, the injunction heretofore granted is continued until further order.

From Frank P. Slattery, Wilkes-Barre.