Lillian RAY, Appellant,

v.

CITY OF DALLAS et al., Appellees.

No. 15882.

Court of Civil Appeals of Texas.

Dallas.

Feb. 17, 1961.

Rehearing Denied March 17, 1961.

Robert B. Hershey, Dallas, for appellant.

H. P. Kucera, City Atty., N. Alex Bickley and Ted P. MacMaster, Asst. City Attys., Strasburger, Price, Kelton, Miller & Martin, Dallas, for appellees.

WILLIAMS, Justice.

This is a zoning case. Plaintiffs in the trial court, T. M. Burgess and wife Ona M. Burgess, and Lillian Ray, a widow, are the owners of unimproved property on Abrams Road and Richmond Street in Dallas, Texas. These lots had, for many years, been zoned under a comprehensive ordinance of the City of Dallas which provided that such property could be used for single-family dwellings and other limited uses under Classification R–10. Plaintiffs brought suit against the City of Dallas seeking a permanent injunction to prevent the City from enforcing such zoning ordinances and from preventing the plaintiffs in the use of the property most appropriate to their use, said suit being brought on the theory that the City of Dallas had been guilty of discriminatory, unreasonable, and arbitrary conduct towards the plaintiffs in refusing plaintiffs' several applications to rezone the property. They also alleged changed conditions and circumstances in the area which, in the judgment of plaintiffs, would render the zoning invalid insofar as their property was concerned. Since Mr. and Mrs. Burgess are not parties to this appeal we confine our discussion to the dispute between appellant, Lillian Ray, and the appellee City of Dallas. The case was tried to a jury and at the conclusion of the testimony appellee moved for an instructed verdict which was overruled. The court submitted the case to the jury which found, in response to special issues, that the City had acted in a discriminatory, unreasonable, and arbitrary manner in refusing to rezone Mrs. Ray's unimproved lot from R–10 to local retail business use; that the Classification R–10, single-family dwelling uses, is not the most appropriate use for Mrs. Ray's property; and that the conditions have so changed in the immediate vicinity as to make it useless for R–10 single-family dwelling uses. The City of Dallas, and forty-one others in the position of intervenors, moved for judgment non obstante veredicto, which motion was granted and judgment entered denying plaintiffs any relief. Mrs. Ray, alone, brings this appeal.

In her first four points, grouped together, appellant contends that the trial court erred in disregarding the jury's findings and thereby holding, as a matter of law, that the City did not act arbitrarily, capriciously, or discriminatorily in refusing to rezone the unimproved property in question. In her fifth point, appellant contends that the trial court erred in disregarding the jury's findings concerning changed conditions of the property and that such judgment amounts to taking of her property without due process of law.

The material facts concerning appellant's unimproved lot, as shown by the record in this case, are as follows: Appellant, and her husband, now deceased, purchased the property in controversy, described as Lot 15, Block B/2788, Country Club Estates No. 1, in 1923. At that time the property was not in the incorporated limits of the City of Dallas. It fronted 50 feet on the north line of Richmond Avenue, and abuts a distance of 200 feet on the east line of Abrams Road. On September 11, 1929, the City Council of the City of Dallas adopted a comprehensive zoning to the west line of Abrams Road which was the then existing City Limits, and at that time designated certain properties facing the west line of Abrams Road for retail uses, said properties having been used for such purposes previous to the adoption of said zoning ordinance. On November 29, 1929, the City of Dallas annexed a large area East of Abrams Road and North of Gaston Avenue and extending to White Rock Lake, including the property owned by appellant and which is now in controversy. On September 12, 1930, the City of Dallas adopted a permanent zoning for the newly annexed area, at which time a retail use was recog-

nized as being conducted in Block A/2787, and referred to in the record as the "Skillern Block" which is bounded by Abrams Road to the west, Richmond Avenue to the north, and Gaston Avenue to the south and east. The annexed area, which is a large residential area, has with one or two exceptions, been used for residential purposes only since it was permanently zoned on September 12, 1930, north of the north line of Richmond Avenue, east of the east line of Abrams Road, north to Mockingbird Lane, and east to White Rock Lake, and which section according to the record, contains many fine residences. Since the original zoning in 1930 there has been some extension of the retail uses on the west side of Abrams Road and there has been some further rezoning on the so-called Skillern Block, retail uses having existed in this block at the time zoning was adopted for that area until it was annexed. The zoning as changed in Block A/2787 now extends to the south line of Richmond Avenue for doctor's offices and apartment uses, zoned as a buffer strip between the retail uses and residential uses, and there has been no extension of business uses north of the south line of Richmond Avenue or east of the east line of Abrams Road in the area where appellant's property is located in Block B/2788. After the area was annexed, a street car line was laid on Abrams Road but that street car line was subsequently abandoned, the rails removed or covered up, and Abrams Road is now shown to be a smooth street. Two large water tanks formerly served water to the residents in the area and which existed in the immediate area on the west side of Abrams Road and a short distance North of the property in question. These tanks have been removed.

The record reveals that the appellant presented several applications to the City Plan Commission and to the City Council seeking a rezoning of Lot 15 owned by her. On at least two of these occasions appellant was represented by competent counsel of her own choosing. The City Council of the City of Dallas after considering the applications denied same. Appellant took the position in her applications to the City Council that Lot 15 should be used for retail business purposes and the City of Dallas, together with the various intervenors, contended that the property should remain residential as zoned. This issue between appellant and appellee, and the intervenors, was clearly drawn by the testimony of witnesses revealed in the statement of facts in this case which contains 794 pages.

Appellant introduced the testimony of Tom Beauchamp, a former member of the City Council, who testified that based upon his familiarity with this property, and after examining the property and hearing the testimony of the witnesses, pro and con, as to the type of zoning which should be applied to the property, that in his opinion the best use of the property is for residential purposes. W. C. "Dub" Miller and Rodric D. Thomas, both former members of the City Council, called as witnesses by appellant, testified that, based upon knowledge of the property and the hearings held, it was their opinions the best use of the property is for residential purposes. Marvin R. Springer, former Planning Director of the City of Dallas, also called as a witness by appellant, and who qualified as an expert in planning and zoning, gave his opinion that the best use of the property of appellant is for residential purposes. This witness also testified that in his opinion the use of the lot owned by appellant for local retail uses would have an adverse effect on the use of property immediately behind these properties for residential purposes. Joe Currin, a real estate expert, called by appellant, testified that in his opinion the best use of the lot in question is for retail purposes.

The record shows that Lot 15 has a buildable area thereon of 3,575 square feet, complying with all zoning regulations and the building code, and that it would easily accommodate a house containing 1,890 square feet which is comparable to the house ad-

joining which contains 2,034 square feet. The Burgess house nearby consists of 1,571 square feet. The original deed on Lot 15 was from the Dallas Trust & Savings Bank to J. H. Ray and described the lot as being 50 feet across the front and 200 feet deep. The record shows that the County of Dallas obtained a 3-foot easement off of west side of Lot 15 for widening the street. The record shows that after Abrams Road was widened that the paving on Abrams Road did not encroach on the western lot line of Lot 15. Clyde Harden, an employee of the Building Inspection Division of the City of Dallas, testified that a building permit would be issued for a residence thereon, if requested. Appellant, Mrs. Ray, testified that she had never made application for a building permit on this lot. Several lay witnesses testified concerning the advisibility of the use of the lot for residential purposes.

■ One of appellant's contentions is that she was not afforded a full hearing before the City Council on her zoning applications; that the decision of the Council whether to grant the zoning in each case was decided by a "show of hands"; and that the City Council really decided the issue in Executive Session prior to public hearings. These contentions are not supported by the record. On several occasions appellant, Lillian Ray, and Mr. and Mrs. T. M. Burgess, plaintiffs below, made joint application to the City Council for rezoning of their respective property. The record reveals that on each occasion the City Council afforded complete public hearing and, as stated, on at least two occasions the appellant, Ray, was represented by counsel of her own choosing. The minutes of the City Secretary reveal that in these zoning applications no action was taken until "after all had been given an opportunity to be heard." Both Mrs. Ray and Mrs. Burgess testified that the City Plan Commission afforded them a full hearing and also the City Council heard them, or anyone else interested, in determining the issue. Witness Pavelka testified that she was at the

City Council hearing in opposition to rezoning on every occasion and that on each occasion appellant was given a full hearing before the City Planning Commission and the City Council. Former Councilman Miller testified that he never made a decision at an Executive Session of the Council and that as far as he knew no other member of the Council made such a decision until after public hearing was conducted. Former Councilman Beauchamp testified that while Executive Sessions were held, during which time the Council was briefed by City employees, that each Councilman was free at the time the matter came before the body as a whole in the City Council to make any decision and vote any way they saw fit.

Appellant does not contend that the Zoning Ordinance is invalid. She complains of its allegedly oppressive effect upon her property and the limitation of its uses.

The recent "population explosion" attended by the increasing exodus of people from rural areas to urban centers has created complex problems in City Planning and has caused a flood of zoning legislation and litigation throughout the country. Tendency of these decisions is in the direction of extending the power of restriction in aid of City Planning. 58 Am.Jur. p. 942, § 5. There are a host of Texas decisions dealing with zoning problems which have definitely and clearly settled the law in this jurisdiction.

The basic principles of law involved are contained in the following statement:

"The legislative body may determine in the first instance whether or not facts or conditions exist warranting a classification; and its determination of that issue cannot be disturbed in the absence of clear showing that there is no reasonable basis therefor. The presumption is in favor of the validity of the ordinance. It will be presumed, in the absence of a clear showing to the contrary, that the governing body has sufficient reason, in view of local con-

ditions, to make the classification which they have made; and if there could have existed a statement of facts justifying the classification or restriction complained of, the courts will assume that it existed. The burden of establishing a discriminatory character is upon a person attacking it on that ground; and any reasonable doubts as to the validity of the classification will be resolved in favor of its validity." 30 Tex.Jur. p. 132, § 61.

The Supreme Court, in City of Waxahachie v. Watkins, 154 Tex. 206, 275 S.W.2d 477, 480, set forth the following principles governing the validity of action of the Municipal Governing Body: (1) Since it is an exercise of the legislative power of the City's Council the ordinance must be presumed to be valid. (2) The courts cannot interfere unless it appears that the ordinance represents a clear abuse of municipal discretion. And the "extraordinary burden" rests on one attacking the ordinance to "show that no conclusive, or *even controversial or issuable, facts* or conditions existed which would authorize the governing board of the municipality to exercise the discretion confided to it." (3) If reasonable minds may differ as to whether or not a particular zoning restriction has a substantial relationship to the public health, safety, moral, or general welfare, no clear abuse of discretion is shown and the restriction must stand as a valid exercise of the City's police power. (Emphasis ours.)

Justice Brewster, in the Watkins case, supra, posed the question: "Have Watkins, et al. met their 'extraordinary' burden to show that there were no controversial or issuable facts which would authorize the city council of Waxahachie to exercise its discretion in the manner herein complained of?" And then stated: *"This query presents a question of law, not a question of fact,* and in deciding it the court should have due regard 'to all the circumstances of the city, the object sought to be attained and the necessity existing for the

ordinance.' *And if there is an issuable fact* as to whether the ordinance makes for the good of the community, the fact that it may be detrimental to some private interest is not material. Edge v. City of Bellaire, Tex. Civ.App., 200 S.W.2d 224, 227, error refused." (Emphasis ours.)

The Supreme Court concluded, based on the record in the case there made, there were issuable facts which tend to establish the City Council did not abuse its discretion in rezoning the property involved and hence its action must stand as a valid exercise of *its police power.*

That the question here involved is one of law, and not one of fact, is no longer open for dispute. It has been conclusively held that it is a question of law for the court to determine whether a particular zoning ordinance is reasonable or arbitrary and whether the power conferred on a governmental agency or a municipality is arbitrarily exercised. 62 C.J.S. Municipal Corporations § 228(2), p. 570. Edge v. City of Bellaire, Tex.Civ.App., 200 S.W.2d 224 (err.ref.); City of University Park v. Hoblitzelle, Tex.Civ.App., 150 S.W.2d 169, (err. dis. certiorari denied), 315 U.S. 781, 62 Sup.Ct. 806, 86 L.Ed. 1188; City of Waxahachie v. Watkins, 154 Tex. 206, 275 S.W.2d 477, supra.

One of the great landmark cases in Texas, and one which rules this case, is City of Dallas v. Lively, Tex.Civ.App.1942, 161 S.W.2d 895 (writ ref.). The identical questions were presented in the Lively case as in the instant case and similar jury questions were involved. Justice Young, of this Court, after reviewing the facts and the applicable principles of law involved, held that the trial court erred in submitting the case to the jury in that the property owner had failed in his effort to "meet the extraordinary burden" required of him under the decided cases. The Court cited King v. Guerra, Tex.Civ.App., 1 S.W.2d 373, 376, (writ ref.) wherein it was said:

"The extraordinary burden rests upon appellee to show that no conclusive, or even controversial or issuable,

facts or conditions existed which would authorize the governing board of the municipality to exercise the discretion confided to it by a valid ordinance in determining a matter of purely governmental policy. * * * So, if it can be said that the evidence in this case raised the issue of the truth of any of the material facts upon which the board refused the permit, then a sufficient answer is that the board were the triers of those facts, and their finding was conclusive and may not be substituted by the finding of a jury."

In the Lively case, supra, Justice Looney delivered a vigorous dissent in which he advanced the same contentions now offered by appellant. The Supreme Court, by an out-right refusal of the writ of error placed its stamp of approval upon the principles of law decided. Rule 483, Texas Rules of Civil Procedure.

This Court in City of University Park v. Hoblitzelle, Tex.Civ.App., 150 S.W.2d 169, 172, (err. dis.) passed upon one of the first zoning cases tried before a jury in Texas. The identical questions were presented in that case as in the instant case and the jury made adverse findings concerning arbitrary action on the part of the City. Chief Justice Bond, in reversing the judgment of the trial court and rendering judgment for the City, said:

"The issue therefore narrows to the inquiry, shall the findings of the Board govern in a matter entrusted by law to their discretion (a purely governmental function), or the findings of the jury to be substituted therefor? Courts may determine whether or not it appears that the governing body of a city acted arbitrarily, but when the facts are fairly debatable, legislative judgment of the legally constituted Board must prevail. * * * The denial of the permit sought by appellee evidently was intended to promote the public safety, health, prosperity, convenience, morals, and general welfare of the city; there is no evidence to the contrary. Or, if

it can be said that the evidence raises the issue of any of the material facts upon which the city authorities refused the permit, then the law delegates to the city authorities, and not to courts or juries, the power and duty of determining the sufficiency of issuable facts in the exercise of the purely governmental function."

See also Long v. City of Corpus Christi, Tex.Civ.App., 315 S.W.2d 24, (writ ref. n. r. e.) in which the court set aside a jury verdict against the City based upon the same principles of law heretofore enunciated.

■ Applying these well-established and firmly recognized principles of law to the facts of the instant case we find that Mrs. Ray has fallen far short in meeting "the extraordinary burden" required by her to establish that the City of Dallas has acted arbitrarily or unreasonable in denying her the change of zoning requested. The record is replete with debatable and issuable facts which render the question one of law and not of fact. Under this record it is not for the court or the jury to substitute its findings for that of the municipal legislative body. The trial court should have granted the appellee's motion for instructed verdict. We therefore overrule appellant's first four points.

■ Appellant's fifth and last contention, namely that the action of the City Council in refusing to rezone the property is tantamount to depriving her of her property without due process of law under the 14th Amendment to the Constitution of the United States, has been decided adversely to appellant in many cases. In Zahn v. Board of Public Works of the City of Los Angeles, 274 U.S. 325, 47 S.Ct. 594, 71 L.Ed. 1074, the identical question was before the Supreme Court of the United States which held that the municipal ordinance was not unconstitutional as applied to appellants' property and that the court will not substitute its judgment for that of

the legislative body charged with the primary duty and responsibility of determining the question.

See also Marblehead Land Co., v. City of Los Angeles, 9 Cir., 47 F.2d 528, 532, wherein the court said:

"In each case there is a definite loss of value which is prohibited by the Constitution as a taking of private property without compensation unless such taking is in the exercise of the police power. The fundamental question, then, in each case, is whether or not the owner has been deprived of property by legitimate exercise of the police power of the state in its effort to promote the general welfare of its citizens." Citing Zahn v. Board of Public Works of the City of Los Angeles, supra.

The same rule is announced in Texas in Niday v. City of Bellaire, Tex.Civ.App., 251 S.W.2d 747; Clesi v. Northwest Dallas Improvement Association, Tex.Civ.App., 263 S.W.2d 820 (writ ref., n. r. e.); McNutt Oil & Refining Co., v. Brooks, Tex. Civ.App., 244 S.W.2d 872.

The judgment of the trial court is affirmed.