Don W. STEARMAN et al., Appellants,

v.

CITY OF FARMERS BRANCH et al.,
Appellees.

No. 16028.

Court of Civil Appeals of Texas.

Dallas.

Feb. 16, 1962.

Rehearing Denied March 23, 1962.

William D. Patterson, Dallas, for appellants.

Saner, Jack, Sallinger & Nichols and Storey, Armstrong & Steger, Dallas, for appellees.

YOUNG, Justice.

Rule 166-A, Summary Judgment Proceedings. By petition, appellants, as plaintiffs, had sought to invalidate a zoning ordinance of appellee City amending the City's comprehensive zoning ordinance and granting a "special permit" to intervenor, Metropolitan Medical Center of Farmers Branch to construct a medical center, consisting of a hospital, doctors' offices and limited allied uses. Such Ordinance No. 279 had been passed by the City Council of Farmers Branch on April 3, 1961 after due notice and full hearing before the Planning and Zoning Commission and City Council. Upon hearing of the motion for summary judgment filed by the City and Intervenor, the same was sustained by the trial court on ground of no disputed fact issues concerning the legality and validity of the ordinance in question; with judgment in favor of movants, followed by this appeal.

The area involved had been originally zoned R-4 (residential). Ordinance No. 279 authorized the named medical center, a joint venture, to develop its 18.8 acre project on land adjacent to property owned by the 42 complaining plaintiffs; the latter claiming that fact issues were raised by affidavits filed by them at time of hearing of motion for summary judgment.

Extensive excerpts of the proceedings before these municipal bodies are shown in transcript. However, we have been compelled to rely on appellees' reply brief for

a résumé of the facts leading up to passage of the enactment. After due notice, a public hearing was held on the application for "special permit" before the City Planning and Zoning Commission on October 25, 1960. Evidence of the lack of any hospital in Farmers Branch and a need of such of the type proposed by intervenors was presented, including the recommendation made by the Commission in January 1959 that a hospital was needed by the City. Minutes of the meeting reflected a full discussion and hearing. The application was considered at two subsequent meetings of the Planning and Zoning Commission, which body on December 11, 1960 recommended that the application be denied. After due notice, a four-hour public hearing was had before the City Council of Farmers Branch on January 28, 1961. Recommendations of the Planning and Zoning Commission were read, and all petitions in opposition before that body were read and considered as "evidence" before the City Council. Through the Mayor, a report was made by a fact finding committee of the Council on inspection of the site and investigation of effect of the proposed enterprise on surrounding properties and their values. A full discussion of proposed special conditions attached to such "special permit" was had and all persons appearing in opposition to the application, including plaintiffs, were given opportunity to be heard. Each member of the Council expressed his opinion in open meeting. Then on January 28, 1961 the application for "special permit" was approved by the City Council, Councilman Hamilton only voting "No". Two subsequent meetings of the City Council were devoted to consideration and preparation of special conditions for such proposed "special permit", to which adjacent property owners opposing were invited and counsel for plaintiffs attended one of them.

On said April 3, 1961 after much discussion and full consideration, participated in by adjoining property owners in opposition, Ordinance 279 granting a "special permit" for such medical center was unanimously passed by the City Council of Farmers Branch. It contained special conditions as to approval of site plan by the Council, limited list of approved "allied retail uses" and their construction in relation to balance of the medical center; set backs and building height requirements, adequate drainage and off-street parking, size and type of signs, required dedication of a strip of land to the City for street purposes; and requiring the City representation on the hospital board of directors.

The answer of both appellees to this suit to invalidate the Ordinance, affirmed the legality and validity of the Ordinance, pleading that the City Council had enacted the measure under the general authority granted to it and other Cities of Texas to enact and amend its Ordinances, and was a valid exercise of the police power granted to the City; and that same was enacted in furtherance of the police powers for protection of public peace, safety and the general welfare of such city and its inhabitants. Appellees specially denied that the municipal governing body acted in an arbitrary, discriminatory and unreasonable manner or that it had abused its legislative discretion, since its decision was based upon adequate evidence; such ordinance being properly conditioned for protection of the rights of adjacent property owners.

On the other hand, appellants say that by the controverting affidavits filed, fact issues are raised of (1) whether or not one or more members of the City Council were biased in favor of the hospital proponents; (2) of whether appellants had not acquired a vested interest in the residential zoning of the subject property by purchase of adjacent lots; and (3) of whether the building of the center would not devaluate appellants' lands. In this connection the rule is well settled that a party moving for summary judgment, has the strict burden of establishing that he is entitled thereto as a matter of law and that all doubts will be resolved in favor of the nonmovant. Webster v. Webster, Tex.Civ.App., 293 S.W.2d 820.

Above claimed "fact issues" are reflected in affidavits of property owners Massad and Culver; the former stating that "one of the Council Members, Mr. Mallon, told him personally that he (Mr. Mallon) would cast his vote in favor of the hospital center regardless of the evidence that was presented at the City Council hearing on January 28, 1961 for the W. L. Knighton request." Even giving full effect to above affidavit as regards the charged "bias" of Councilman Mallon and thus eliminating his affirmative vote, still the action in favor of the "special permit" had been approved by a majority vote of the Council. Any so-called bias on part of the named Council Member would therefore be immaterial and need not be further considered; the Council by the way consisting of seven members.

Relative to appellants' other suggested fact issues, the "special permit" method of amending a comprehensive zoning Ordinance has been recognized in Texas. Prince v. W. H. Cothrum, Co., Tex.Civ. App., 227 S.W.2d 863; Clesi v. Northwest Dallas Improvement Ass'n., Tex.Civ.App., 263 S.W.2d 820; Ray v. City of Dallas, Tex. Civ.App., 343 S.W.2d 930: appellants obviously having no vested interest in continuity of the original Zoning Ordinance. And the likelihood of devaluation of the property of appellants, perforce of the "special permit" was quite an item of controversy before the City Council. The burden of thus attempting to demonstrate that the amended Ordinance is arbitrary and unreasonable has been termed "extraordinary" by the courts. First stated in King v. Guerra, writ ref., Tex.Civ.App., 1 S.W.2d 373 (where the permit was refused) the court held: "The extraordinary burden rests upon appellee to show that no conclusive, or even controversial or issuable, facts or conditions existed which would authorize the governing board of the municipality to exercise the discretion confided to it by a valid ordinance in determining a matter of purely governmental policy. * * * So, if it can be said that the evidence in this case raised the issue of the truth of any of the material facts upon which the board refused the permit, then a sufficient answer is that the board were the triers of those facts, and their finding was conclusive and may not be substituted by the finding of a jury."

The judgment under review is accordingly affirmed.