**EDGE et al. v. CITY OF BELLAIRE et al.**

No. 11848.

Court of Civil Appeals of Texas. Galveston.

Feb. 13, 1947.

Fulbright, Crooker, Freeman & Bates and Stokes & Stewart, all of Houston, for appellants.

James V. Allred, of Houston, for appellees intervenor property owners.

Paul Strong, of Houston, for appellee City of Bellaire.

MONTEITH, Chief Justice.

This action was brought by appellants for an injunction restraining the City of Bellaire, its officers, agents and employees, from interfering with them in the operation of their restaurant and grill located on Lots Nos. 20, 21, and 22 in Block 2 of the City of Bellaire, Texas.

They alleged that the property involved was located in a de facto business area in the City of Bellaire at the time the zoning ordinance was enacted and that the action of the city commissioners, in placing the property in a residental zone, was unreasonable, discriminatory and arbitrary.

By cross-action the City of Bellaire sought an injunction to restrain further violations of the zoning ordinance. Thirty-seven property owners of the City of Bellaire intervened and asked that the zoning ordinance be enforced and upheld.

In answer to one special issue submitted a jury found that the action of the Bellaire City Commission in including said lots in a residental zone was unreasonable and discriminatory. After the return of the jury's verdict appellees moved for a judgment non obstante veredicto for numerous reasons, including the alleged fact that the plaintiffs had failed to discharge the burden imposed upon them of showing that the zoning ordinance in question was unreasonable, discriminatory or arbitrary at the time of its passage and that they had failed to plead or prove that there was no substantial evidence before the city commission at the time of the passage of such

ordinance justifying the inclusion of said lots in the residental area.

After due notice and hearing on appellees' said motion the trial court rendered judgment non obstante veredicto enjoining and restraining appellants from in any way using the property in question for any purpose not authorized in a single family dwelling district under the provisions of the zoning ordinance of the City of Bellaire.

On May 7, 1939, the Bellaire city council passed an ordinance placing Lots 20, 21 and 22 in Block 2 of the City of Bellaire, in a residental zone, pursuant to Articles 1011a to 1011j, Vernon's Ann.Civ., Statutes. They caused a certificate dated July 16, 1942, signed by the Mayor and attested by the City Secretary, to be placed of record in the office of the County Clerk of Harris County for the purpose of placing the public on notice of the existence of such zoning ordinance and to advise the public of the regulations and restrictions in connection therewith.

At the time said ordinance was enacted C. L. Anderson owned the property and occupied it as his residence. From May, 1942, until November of that year he conducted a cafe thereon, and in December, 1944, he conveyed the lots involved to O. B. Snowden, who re-opened the cafe in the residence located thereon. On January 28, 1946, Snowden conveyed the property to appellant, Gordon Edge, by deed which recited that the conveyance was made subject to all the conditions, restrictions and covenants, if any, applicable to and enforceable against the property. Immediately after his purchase of the property, Gordon Edge, without attempting to secure a permit from the City, began the construction of an addition to the residence located thereon, changing its character from a residence to a business establishment. He made no attempt to secure a building permit from the City of Bellaire. The construction of the building was stopped by the City but later a building permit was issued to him with the understanding that the property was residental and that the issuance of the permit would not dedicate the property to business purposes. He accepted the permit, with the statement that

appellants would take their chances. The permit was afterwards revoked.

Generally speaking, municipal corporations have the right, under the police power given them, to safeguard the health, comfort, and general welfare of their citizens by such reasonable regulations as are necessary for the purpose. City of Dallas v. Lively, Tex.Civ.App., 161 S.W.2d 895, writ of error refused; 30 Tex.Jur. 120, Sec. 58.

It is also well settled that zoning ordinances fall within the police power of municipalities, and that such power "may be exerted to regulate the use, and where appropriate or necessary prohibit the use, of property for certain purposes in aid of the public health, morals, safety, and general welfare, and that the constitutional limitations form no impediment to its exertion where the enactment is reasonable and bears a fair relationship to the object sought to be attained." Ellis v. City of West University Place, 141 Tex. 608, 175 S.W.2d 396, 397; Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475.

Appellants apparently concede the ordinance to be valid. They complain only of its allegedly oppressive effect upon their property and the limitation of its uses.

It follows that the only question presented in this appeal is whether the findings of the governing board of the City of Bellaire, who were vested with the right under the police power to enact such reasonable ordinances as were necessary to safeguard the health, comfort and general welfare of their citizens, should govern, or whether the findings of the jury that said ordinance was unreasonable and discriminatory when applied to appellants' property, should be substituted therefor.

In the case of City of Dallas v. Lively, Tex.Civ.App., 161 S.W.2d 895, 898, writ of error refused, the court, under a similar state of facts, in its opinion held that an attack upon any regulatory measure of a municipality is usually subject to the well settled rule that:

" 'The legislative body may determine in the first instance whether or not facts or conditions exist warranting a classification; and its determination of that issue cannot

be disturbed in the absence of a clear showing that there is no reasonable basis therefor. The presumption is in favor of the validity of the ordinance. It will be presumed, in the absence of a clear showing to the contrary, that the governing body had sufficient reason, in view of local conditions, to make the classification which they have made; and if there could have existed a state of facts justifying the classification or restriction complained of, the courts will assume that it existed. The burden of establishing its discriminatory character is upon a person attacking it on that ground; and any reasonable doubts as to the validity of the classification will be resolved in favor of its validity.' 30 T. J., p. 132, Sec. 61."

To sustain charges that the municipal judgment is arbitrary and unreasonable in its effect upon his property, it is held that "the extraordinary burden rests upon appellee to show that no conclusive, or even controversial or issuable, facts or conditions existed which would authorize the governing board of the municipality to exercise the discretion confided to it by a valid ordinance in determining a matter of purely governmental policy. * * * So, if it can be said that the evidence in this case raised the issue of the truth of any of the material facts upon which the board refused a permit, then a sufficient answer is that the board were the triers of those facts, and their finding was conclusive and may not be substituted by the finding of a jury." King v. Guerra, Tex.Civ.App., 1 S.W.2d 373, 376 (writ refused).

In the case of City of University Park v. Hoblitzelle, Tex.Civ.App., 150 S.W.2d 169, 172, in holding that the question as to whether an ordinance excluding business and trade from a residental district was reasonable, and whether the power conferred upon a governmental agent of a city was arbitrarily exercised or not is for the court to determine as a matter of law, the court said: "* * * whether a particular ordinance is reasonable or arbitrary presents a question of law for the court and not for the jury; and, in determining the law, the court will have due regard to all the circumstances of the city, the object sought to be attained and the necessity existing for the ordinance. Indeed, the ordinance may have a detrimental effect on individual property * * * but, in the march of progress, private interests must yield to the good of the community. * * * the law delegates to the city authorities, and not to courts or juries, the power and duty of determining the sufficiency of issuable facts in the exercise of a purely governmental function."

In the instant case, the traffic hazard is present, in that the record reflects that Richmond Road, on which the property in question is located, was heavily traveled, and the fact that cars in turning into and from the Richmond Grill would probably tend to congest traffic.

The record shows that at the time the zoning ordinance was passed there was no restaurant, cafe or other business on the lots in question. C. L. Anderson and his family had used the house on the lots in question, now known as the Richmond Grill, as a residence continuously from 1920 to 1941. The property was leased to Charles Adair in November, 1942. He used it as a residence until October, 1944. The only proof as to what was before the Bellaire city council on May 7, 1939, was the testimony from W. H. Templetin, Jr., a member of the zoning committee, who testified that the committee recommended that the property in question be residential, because the only building on that block was the residence and home of C. L. Anderson.

The record also discloses that in 1939 there was a residence about a block northeast of the property on the north side of the Richmond Road and another residence approximately a block southwest of this property on the north side of Richmond Road. C. L. Anderson's mother occupied other property as a residence behind the property in question. The property north of Richmond Road was at that time open prairie, except for the plant of the Austin Bridge Company, approximately 1000 feet north of the property in question. On the date the zoning ordinance was enacted the only business being conducted nearby was an ice house and a filling station on Chestnut Street, more than 100 feet from the Anderson house, and a vault used in connection with the filling station.

228

The Richmond Grill did not begin operation until May 1, 1942, three years after the passing of the zoning order.

While it is unfortunate that the officials of the City of Bellaire issued a permit to appellant, Gordon Edge, to erect a business establishment within the zoning area, the conduct of these officials, however harsh and unjust its effect might have been on appellants, can not be used to prejudice or destroy the rights of the public to require the enforcement of the zoning ordinance, which was valid on its face (City of San Antonio v. Humble Oil & Refining Co., Tex. Civ.App., 27 S.W.2d 868), since in enforcing an ordinance valid in all respects, the officials of the city were discharging a governmental function and the city and its citizens cannot be bound or estopped by unauthorized acts of its officers in the performance of that function. Rolison v. Puckett et al., Tex.Sup., 198 S.W.2d 74.

It follows, we think, that the judgment of the trial court must be in all things affirmed.

Affirmed.