**GERMANY et al. v. POPE et al.**

No. 15047.

Court of Civil Appeals of Texas.
Fort Worth.

May 27, 1949.

Rehearing Denied July 8, 1949.

George P. Gleeson, of Fort Worth, for appellants.

Marvin B. Simpson, Jr. and Fred S. Dudley, both of Fort Worth, for appellees.

SPEER, Justice.

Appellees, L. W. Pope, O. M. Curry, and L. T. Williams, brought this suit for injunction against appellants, Fred Germany, George Jewell, Frank Fortnam, Dan O. Coates, E. W. Shine, L. O. Whorton, and City of River Oaks.

The named City had, prior to January 11, 1949, operated under a charter authorized by Title 28, Chapter Eleven, Article 1133 et seq. of 1925 Revised Civil Statutes, Vernon's Ann.Civ.St. art. 1133 et seq., and Fred Germany was its Mayor and the other named appellants constituted its Board of Aldermen.

By popular vote the City of River Oaks adopted the "Home Rule" form of government and a charter applicable thereto under Title 28, Chapter Thirteen, R.C.S., Vernon's Ann.Civ.St. art. 1165 et seq., on January 11, 1949. The new charter embraced the same area as did the City before its adoption. On the last named date, after the result of the election was canvassed and declared, the named appellants, aside from the City, purporting to act as the governing body of the municipality, introduced and passed an ordinance providing for the annexation of territory adjacent to its borders and began the publication of the ordinance as provided by law in such cases.

Appellees, who were residents and property taxpayers in the territory proposed by the ordinance to be annexed, brought this suit by sworn petition under the "Declaratory Judgment Act" Vernon's Ann.Civ.St. art. 2524—1, on February 4, 1949, for themselves and for the benefit of all other persons as a class similarly situated, to enjoin appellants from further publication and from putting said ordinance into effect.

The court issued a "show cause" order to appellants and set a date for hearing. Appellants filed a plea in abatement and alternatively filed a verified answer refuting all material affirmative and controverted parts of appellees' petition. A hearing was had by the court and a temporary injunction was issued, from which order this appeal came.

In their briefs appellees make it plain that this suit is not an attack upon the newly adopted "Home Rule" charter, nor upon any previous charter of the City, nor upon any election held by the City for the election of officers, but that the action is based solely upon the alleged illegal acts of the individual appellants purporting to act as the "City Council" of the City of River Oaks. Appellees' petition confirms this contention.

Appellants' pleadings and briefs present the contention that the individual appel-

lants had previously been elected as Mayor and City Aldermen respectively of the old City of River Oaks and that their respective terms of office had not expired at the time of the adoption of the new "Home Rule" charter, nor at the time of the passage of the offending ordinance annexing territory. They contend that the acts of the individual appellants were the acts of the City Council of the City of River Oaks under the newly adopted charter and that if they did not constitute the City Council de jure they did constitute such Council de facto.

The respective contentions thus announced present the principal issue upon which we are called to pass.

It is conceded by appellees (as naturally it must be) that the City of River Oaks had authority under its newly adopted home rule charter to pass by action of its governing body an ordinance to annex additional territory lying adjacent to its borders; but appellees' sole contention here is that the individual appellants did not constitute the City's governing body after the adoption of the new charter. It is argued that while said individuals were the governing body of the City under its former existence as a City operating under General Laws, that municipality ceased to exist upon the adoption of the new charter and changed form of government, and that when that corporation ceased to exist, its officers ceased to be such and did not become similar officers of the City under the new charter and changed form of government.

By appropriate points of assigned error, appellants assail the correctness of the temporary writ ordered by the court, because: (a) The trial court was without jurisdiction to hear and determine such a proceeding and that a quo warranto proceeding was the only remedy available to reach such a controversy; (b) that their plea in abatement should have been sustained since by the terms of appellees' petition and the verified plea, it was made plain that appellees' attack was a collateral one upon the validity of the City's corporate existence and the authority of its council to act thereunder in the passage of the annexation ordinance complained of, and (c) since appellants' verified answer clearly revealed that the individual appellants had been previously elected as members of the City Council and their terms of office had not expired at the time of the adoption of the home rule statute, and no other persons had been elected to succeed them as a City Council, they automatically became the council of the reorganized municipality with tenure of service until their successors were elected and qualified.

We think the trial court had jurisdiction to hear this injunction proceeding. It does not fall within that class of cases controlled by Article 6253, R.C.S., referable to quo warranto proceedings. We repeat that the only question involved in this case, in the main, is one of law made by the pleadings, that is, did the individual appellants act either as de jure or de facto officers comprising the city council when they passed the ordinance of annexation?

In support of their contention that the trial court was without jurisdiction (as well also relating to their plea in abatement), appellants cite and rely upon the rule announced in Kuhn v. City of Yoakum, Tex. Com.App., 6 S.W.2d 91, and many cases following it. In that case it was held that the suit could only be maintained by a quo warranto proceeding under the provisions of Article 6253, R.C.S. That case involved the boundaries of a school district where the City had assumed control of the public school system. An election had been held, result declared and taxes levied against the inhabitants of the annexed territory. In such cases the law required that a majority vote of the inhabitants of the territory to be annexed should be had. The action considered by the court was one by the residents of the annexed territory who attacked the validity of the election under which the territory was annexed upon charges that the petition upon which the election was ordered and held did not contain a majority of the inhabitants affected, that there was fraud, conspiracy, secrecy and misrepresentations in procuring signatures to the petition and therefore the election was void. The injunction was

sought to prevent the assessment and collection of taxes against those attacking the validity of the annexation proceedings.

Practically all subsequent cases adhering to the doctrine announced in the Kuhn case, supra, involve an attack upon the validity of the existence of the municipality purporting to act; such as Crain v. Adams, Tex.Civ.App., 120 S.W.2d 290, 291, where it was said, "We construe the information to be an attack upon the validity of the school district as organized," etc. In King's Estate v. School Trustees of Willacy County, Tex.Civ.App., 33 S.W.2d 783, writ refused, the Kuhn case, supra, was followed and again it was held that a school district is a quasi corporation, and its organization and existence could be inquired into only by a quo warranto proceeding under Article 6253, R.C.S. Many other earlier decisions are cited by the Courts of Civil Appeals in support of the rule but a reading of each makes it clear that attacks were made upon the legal existence of the corporate municipality attempting to act. The distinction between those cases and the one before us lies in the fact that the corporate existence of the City of River Oaks operating under a home rule charter duly adopted is expressly admitted by appellees, and the sole ground of attack upon the proposed ordinance is that the individual appellants did not constitute the City Council of said City when they attempted to promulgate, pass and put it into effect.

We come now to consider appellants' contention that if the court had jurisdiction to hear and determine this matter, appellees did not discharge the burden of establishing their right to injunctive relief upon their asserted theory that the individual appellants did not legally constitute the City Council or governing body of appellant City of River Oaks when they proposed and passed the ordinance of annexation.

In 24 Tex.Jur., 181 to 184, secs. 135 to 137, we find several abbreviated rules concerning the issuance of the temporary writ of injunction as taken by that compendium from cases cited in the footnotes; those considered applicable here are: "A verified petition and a responsive sworn answer thereto are to be taken together as evidence on a hearing for a temporary injunction. * * * Conversely, although a sworn petition alleging sufficient facts constitutes sufficient proof where the hearing is had on it alone;" and "It is a common and well-recognized practice to receive affidavits on the hearing of an application for a temporary injunction. * * *" Under sec. 137 it is said that if a verified petition is "met by a responsive and specific verified answer, a verified petition which is unsupported by affidavits or other proof is overcome, and a temporary injunction may be denied, especially if a lack of equity in favor of the petitioner appears."

Appellants alleged in substance by their verified answer, (and it is not controverted by appellees), that in 1941 "River Oaks Village" was incorporated under Article 1133 et seq., R.C.S. That on May 6, 1946 the Board of Aldermen of "River Oaks Village" under authority of Article 961, R.C.S., by ordinance, adopted Title 28, chapters 1 to 10 inclusive of 1925 R.C.S., Vernon's Ann.Civ.St. art. 961 et seq., and changed the name of said River Oaks Village to that of the City of River Oaks, Texas; that from said date of May 6, 1946 up and until the adoption of the Home Rule Charter on January 11, 1949, the municipality operated and existed pursuant to the provisions of said Title 28, Chapters 1 to 10 inclusive of 1925 R.C.S.

A proposed charter under the cited statutory provision was prepared and adopted by the inhabitants. The changed charter which succeeded that of the City as organized and operated under the General Laws, in Chapter 2—Boundaries, reads: "The boundaries of the City of River Oaks shall be the same as have been heretofore established and now exist, which are more fully described as follows: towit:" Then follows a lengthy description by metes and bounds of the corporate area. The charter purports to cover the many powers vouchsafed by the Constitution and statutes of this state to municipalities legally adopting articles 1165 et seq. By Chapter 4, Sections 1, 2 and 11 of the charter, it is provided that the governing body of the City

shall be the Mayor and five Councilmen; they shall be the only elective officers and when elected and qualified shall serve for a period of two years or until their successors are elected and qualified. By Chapter 7, Section 3, of the charter, it is provided that:• "All ordinances of the City of River Oaks now in existence and not inconsistent with the provisions of this Charter shall remain in full force and effect until altered, amended or repealed by the City Council." Chapter 4, Section 1, provides that the governing body of the city shall be the Mayor and five councilmen. By Chapter 5, Section 2, it is provided that the regular municipal election shall be held on the first Tuesday in April, 1949 and on the same date annually thereafter. The charter docs not specifically provide that the city council as it existed before the adoption of the new charter should continue to act until its successors were elected and qualified.

In other jurisdictions we find what to us seems to be accurate statements of proper rules in cases like the one before us. As applicable to the undisputed facts in the instant case the following principles have been announced:

■ "A city does not lose its identity by adopting a commission form of government." 43 C.J. 166, sec. 151(2); McQuillin, Municipal Corporations, Vol. 2, p. 1162, sec. 886.

■ "A municipality transferred from one class to another remains the same public corporate entity." 43 C.J., p. 105, sec. 58(2).

■ "Change in the municipal organization by charter amendment or consolidation or in class or grade, in the absence of legal provisions to that effect, will not, ordinarily, result in a vacation of the offices." McQuillin, Municipal Corporations, Vol. 2, p. 228, sec. 510, citing in footnote cases from Georgia, Iowa, Mississippi, Nebraska, New Jersey, New York, Pennsylvania, Utah, and Washington. Substantially the same rule is announced in 37 Am.Jur., p. 637, sec. 20.

"In the absence of provision to the contrary, the officers of the old corporation hold their offices until the officers of the succeeding corporation are elected and qualified." 43 C.J., p. 170, sec. 160(i), citing in footnote cases from Connecticut, Kansas, Kentucky, Missouri, Nebraska, New York, Pennsylvania, and Tennessee.

■ A de facto officer is one who, by his acts, has the appearance of being the officer he assumes to be, but one who in fact has no title to the office he assumes to hold; he is to be distinguished from a mere usurper. McQuillin, Municipal Corporations, Vol. 2. p. 204, sec. 500.

■ "It seems that when an office is abolished and another substituted in its place and the former officer holds over until the new officer is chosen, he is a de facto officer for such period." Ibid., p. 210, sec. 502.

■ It is universally conceded that acts performed by a de facto officer under color of the office under which he purports to act are legal in so far as his capacity to act is concerned. This is true as a matter of public policy. Ibid., p. 212, sec. 504.

■ From the record in this case we know that the City of River Oaks operated as a municipal corporation under General Laws from May, 1946 to January 11, 1949, with elective officers as Mayor and Aldermen, known as its City Council; that the members of the City Council were each elected for a term of two years and that the individual appellants in this case constituted the City Council on January 11, 1949; that the elective term of office of neither had expired at that time; that under the newly adopted charter the City Council consisted of a Mayor and five commissioners, who constituted the City Council; that the new Council could only be elected on the first Tuesday in April, 1949.

It is quite obvious that the City was functioning as such and that its property rights and duties were continuous during the interval which required its governing body to carry on. Under Article 1173, R. C.S., the Mayor was required to certify the actions of the City in adopting the Home Rule charter to the Secretary of State. Then we may ask, who was the Mayor? The answer is unquestionably one of the appellants, for there was no

other. We believe that sound public policy forces the inevitable conclusion that until such time as a new City Council could be elected under the new charter, the City Council of that same City, which did not lose its corporate identity by adopting a new charter and changing its class as a city, could and did continue to perform the duties of the City Council until the election could be held to replace them. The fact that the successors when elected would be commissioners and not aldermen is of no consequence; each group constituted the City Council; there is no magic in the name by which the members were to be known. It is contrary to a sound public policy to announce a rule that the City would be without officers and a governing body during a period of about 2½ months. It would be to invite chaos in the preservation of the peace and the protection of property rights of individuals and the orderly administration of corporate affairs.

We have seen no Texas case in which the same factual situation now before us has been discussed. In support of the judgment of the trial court, which in effect held that the individual appellants did not constitute the City Council either de jure or de facto and were without authority to pass the ordinance of annexation, the appellees cite and rely upon certain Texas decisions. There is language used in some of these cases under the facts there involved which, if applicable to the facts before us, tends to support the trial court's judgment. We shall briefly refer to some of these cases.

In Smith v. City of Port Arthur, Tex. Civ.App., 62 S.W.2d 385, 387, the assignee of a portion of the unearned salaries of City *employees* (not elective officers) sued the City. The assignors had been employed at so much per month. The City Council terminated assignors' employment and the court denied recovery by the assignee. After the employment began the City changed its form of government to that of Home Rule. Although the question of the term of office of the members of the City Council was not before the court, it used this broad language: "The charter of a city is its organic law, and every *office-holder or employee* takes his office or accepts and contracts for his employment with the city subject to the exercise of the right of the people under the Constitution to change their form of government" (our emphasis), and further held that by the adoption of the Home Rule charter former offices and employment terminated, citing among other cases Bennett v. City of Longview, Tex.Civ.App., 268 S.W. 786. Appellees also rely upon the last cited case.

In City of Mart v. Richards, Tex.Civ. App., 235 S.W. 352, the City had been operating under a charter which provided for the election of a city marshal, during which time appellee Richards was elected to that office. During the term of Richards' elective office, the city changed its charter, making the office appointive and authorizing the city to create certain offices and appoint persons to fill same and to abolish such offices within the discretion of the City Council. Richards fell within one of the appointive places. It was held he could not recover for unearned salary during the period of the remainder of his elective term.

The cited cases are distinguishable from the instant one in that neither opinion indicates whether or not the acts of the city council complained of were by a city council under the former charter holding over until their successors could be elected and qualified or by a city council elected and acting under the new charter.

We have written somewhat at length on this appeal from the issuance of a temporary injunction, because we accredit all parties with utmost good faith in their respective allegations of the actual situation involved here and unless amendments are made when trial is to be had upon a final hearing to make the injunction permanent no proper result could be reached than the one here expressed by us.

■ In view of the undisputed facts as disclosed by the record before us, the general rule to the effect that the issuance of a temporary injunction is within the sound judicial discretion of the trial court should not be extended to a case like this where there are no disputed facts and only a question of law is involved.

We therefore conclude that the temporary injunction was improvidently issued, that it should be dissolved and the cause reversed and remanded to the trial court for such further proceedings as the parties deem advisable to pursue. It is so ordered.