**DAVIS et al. v. NOLTE.**

**No. 9882.**

Court of Civil Appeals of Texas. Austin.

May 17, 1950.

Rehearing Denied June 7, 1950.

J. H. Schleyer, New Braunfels, for appellants.

Frank B. Voight, New Braunfels, Knetsch, Jandt & Janssen, Seguin, Elbert Jandt, Seguin, for appellee.

GRAY, Justice.

· This suit involves an ordinance adopted by the city of New Braunfels on November 1, 1948, which amended the comprehensive zoning ordinance adopted by that city on June 18, 1945. By this amendatory ordinance the area here involved was changed from Zone A for one and two family residences to Zone B, residential.

The area involved was placed in Zone A in 1945 and lies in the northeastern section of the city, is west of the M. K. & T. Railroad tracks and includes an area along the west bank of Comal River. The highways and business routes therefrom leading into the city approach from the south and are not in the immediate proximity of the involved area. Prior to, and since, 1945, this area has been an exclusive residential district with a continued development as such without any commercial or industrial encroachment. To the northeast of the property involved, and separated therefrom by Houston Street, is Camp Ulbricht, a tourist camp, which was in existence as such in June 1945, and is still in operation. In 1945 this camp was zoned B residential.

On April 16, 1948, appellee was issued a permit to construct cottages on the property involved, being Blocks 5110 and 5113, for use as a tourist camp. (These blocks were then in Zone A and admittedly the construction of a tourist camp was not authorized there by the zoning ordinance of 1945.) On July 23, 1948, appellants filed their suit, praying that appellee be enjoined from making the proposed construction. A temporary restraining order was issued and, by agreement, was continued in force until the date of the trial. While the suit was pending and after public hearing, the city, over appellants' protest, on November 1,

1948, adopted the amendatory ordinance placing Blocks 5110 and 5113 in Zone B. Appellants amended their pleadings and attacked the amendatory ordinance as being invalid.

Upon a nonjury trial the court found the permit issued to appellee on April 16, 1948, was invalid, that the amendatory ordinance adopted on November 1, 1948, was valid, and denied appellants injunctive relief but without prejudice to their right to prevent uses of the property (Blocks 5110 and 5113) which are not authorized by the regulations applicable to Zone B.

The record before us shows that after making application for and receiving a permit to construct some twenty-five or thirty tourist cottages thereon, appellee purchased Blocks 5110 and 5113 from his father who had owned the same for some twenty-five years. Upon the trial appellee declared his intention to construct the cottages and, in connection therewith, to provide a recreational center where games of dominoes, cards and the like could be played, dancing to music furnished by a juke box could be engaged in, soft drinks and beer sold, with boating and swimming available to guests and to the public for a price.

Mr. Nuhn, who has been mayor of the city continuously since 1942, testified that prior to the adoption of the comprehensive zoning ordinance in 1945, the city employed engineers, appointed a zoning committee, had hearings, and, at a great deal of expense, adopted the zoning ordinance as the plan for the future development of the city, and that since 1945 the conditions have not changed. Both the mayor and Mr. Gode, a real estate broker and a resident of the city for many years, said the residential districts had continued to develop over the past years, and Mr. Gode said no other encroachment whatever had been made on the areas.

The most cogent, if not the only, evidence relative to the needs of the city or to the general welfare of the community demanding a rezoning of the property here involved to allow the construction of tourist courts was given by Mr. Mathews, manager of the chamber of commerce and a resident of the city since 1946, who said the city could use several new tourist courts. However, he did not say the need is now greater than in 1945, and did not express any opinion as to where such courts should be located, except to say there are several areas adaptable to the operation of tourist courts which would not interfere with private residences. Mr. Nuhn said "that the applications were passed on for the primary purpose of serving the best interest of the most people." However, he did not relate the facts from which he arrived at such conclusion, except he did say: "I told Mr. Nolte, I felt if the permit would be granted that the city would want to see only neat improvements, and a well regulated camp or cottages put in."

The entire record before us shows that prior to the adoption of the comprehensive zoning ordinance on June 18, 1945, the city, at considerable expense, made investigations, employed engineers, held public hearings, and then adopted the ordinance as the plan for the future development of the city. Under this plan the city was divided into zones and the uses of the properties located therein were restricted. Since that time conditions have not changed except that the city has continued to grow and develop in keeping with this plan.

Appellants complain that the amendatory ordinance is unconstitutional and void because it is arbitrary and unreasonable, and has no substantial relation to and does not promote the health, safety, morals or general welfare of the community.

The authorities appear to be well in agreement to the effect that when the legislative body of a city has exercised its judgment and discretion and has adopted an ordinance of the nature here involved, such ordinance is prima facie valid, and before a court can set it aside it must appear that the board acted arbitrarily, or that its action was unreasonable because of the lack of necessity for the ordinance as a promotion of the health, safety, morals or the general welfare of the community. Under such circumstances it is a question of law whether or not the ordinance is arbitrary or unreasonable. City of West University

Place v. Ellis, 134 Tex. 222, 134 S.W.2d 1038; Edge v. City of Bellaire, Tex.Civ. App., 200 S.W.2d 224 (Er.Ref.).

In Barrington v. City of Sherman, Tex. Civ.App., 155 S.W.2d 1008, 1011 (Er.Ref. Want of Merit), the court said:

"* * * The comprehensive scheme necessarily had a future outlook and was invested with a degree of permanency that properly could not be disturbed by an amendment, unless the character and use of the district or surrounding area have so changed that the public's health, morals, safety and general welfare demand it, but not merely because someone wants it done, or thinks it ought to be done.

"In the case of Wilcox v. City of Pittsburgh, 3 Cir., 121 F.2d 835, 837, a zoning case, among other things, the court said: 'As conditions are the basis and justification for zoning, clearly a change in the former is essential to a change in the latter. * * * The relevancy of conditions to the purpose of zoning, is so obvious that a change therein has been held to make original zoning restrictions invalid.' In the case of Phipps v. City of Chicago, 339 Ill. 315, 171 N.E. 289, 293, the Supreme Court of Illinois, having before it a case very similar on the facts to the instant case, had this to say: 'When appellant passed the original zoning ordinance its powers were not exhausted. It could amend the ordinance. But the power to amend was not arbitrary and could not be exercised merely because someone wanted it done or thought it ought to be done. It could only be exercised when the public good demanded or required that the amendment be made. When appellees bought the land they had a right to rely upon the classification which existed at the time the purchase was made. They also had a right to rely upon the rule of law that the classification would not be changed unless the change was required for the public good. * * * There was evidence tending to show that the amendment was made because certain parties wanted it made so they could build more buildings for residence purposes. When all the facts contained in the stipulation are considered they do not show such a requirement for the

public good as justified the amendment to the classification. The amended ordinance was unreasonable, and invaded the rights of appellees without justification.' The same court made a similar holding in Kennedy v. City of Evanston, 348 Ill. 426, 181 N.E. 312; also, see Leahy v. Inspector of Bldgs., 308 Mass. 128, 31 N.E.2d 436."

By his findings of fact No. 6: "The court further finds that the issues as brought before the City Commission with reference to the advisability of the passage of the amendatory ordinance, were such issues and were of such a nature that reasonable minds could differ upon the proper conclusion to be had with reference to the action to be taken by the City Commission."

However, there is no finding relative to the existing conditions, and the evidence relative thereto is above related, we, therefore, think the above finding is not controlling.

■ The trial court concluded that appellants failed to discharge the burden of proof resting on them. We do not agree with this conclusion. The evidence is undisputed that the conditions as they existed on June 18, 1945 and at the time the amendatory ordinance was adopted, have not changed. Any idea of benefits to the public by reason of the change is refuted by the evidence which shows that the area involved is, and for many years has been, an exclusive residential district, that if the amendatory ordinance is upheld the hazards of traffic in the area will be increased, that the existing privacy and quietness of the area will be diminished and that the value of the properties located there will decrease. These later facts standing alone would not have controlling force, yet, if the public does not benefit from the change, then such facts are to be considered. City of West University Place v. Ellis, supra.

We think the question presented is the reasonableness of the ordinance and that for the reasons stated it must be held to be unreasonable as not in promotion of the general welfare of the community.

We note that the Supreme Court has granted a writ of error in Ham v. Weaver, Tex.Civ.App., 227 S.W.2d 286, on points

to the effect that the Court of Civil Appeals erred in failing to find as a matter of law that since there was in fact, from the time of the enactment of the basic ordinance, no substantial change in the character of the Zone A District or in the character of the structures therein or of the uses thereof, and no substantial change within a reasonable distance of said Zone A District, the amendment is void and unenforcible.

The amendatory ordinance contains provisions other than those relating to Blocks 5110 and 5113, but this opinion is limited to the ordinance as it relates to those Blocks.

The judgment of the trial court is reversed and judgment is here rendered declaring the amendatory ordinance invalid in so far as it relates to Blocks 5110 and 5113.

Reversed and rendered.