CLESI et al.

v.

NORTHWEST DALLAS IMP. ASS'N et al.

No. 14708.

Court of Civil Appeals of Texas.

Dallas.

Oct. 9, 1953.

Rehearing Denied Dec. 11, 1953.

Saner, Jack, Sallinger & Nichols, H. P. Kucera, City Atty., and .W. R. Allen, Asst. City Atty., and Jas. H. Martin, Dallas, for appellants.

Corenbleth, Thuss & Jaffe, Dallas, for appellees.

YOUNG, Justice.

This is a zoning case; appellees as petitioners in the trial court seeking injunctive relief against Brazil Clesi, Salvadore Clesi, the City of Dallas and its Building Inspector Farrell. Both plaintiffs and the Clesis own lots in Lovers Lane Heights Addition to the City of Dallas, which addition had been zoned since municipal annexation in 1941 for single family residential use (R–7.5). In January 1953 Dallas City Council by ordinance No. 5678 had rezoned the eleven Clesi lots together with twelve others facing on Inwood Road, west side, for Apartment–2 uses; validity of said ordinance being challenged in the instant suit. Upon hearing, the court found that plaintiffs were entitled to a temporary injunction as prayed, declaring the numbered ordinance to be "wholly void"; and restraining Brazil and Salvadore Clesi from using their lots for any other than single family residential purposes until final hearing and determination of the cause, conditioned upon filing of a $7,500 bond payable to defendants. This order of restraint was duly excepted to and is here presented for review.

Lovers Lane Heights Addition embraces some 294 lots located in the north part of the Dallas municipality; the addition, so far as material here, facing on the west side of Inwood Road (a north and south street), and between Lovers Lane and University Boulevard, which streets run east and west. Portion of a zoning map in evidence sufficiently pictures the locality [1]:

By further reference to above map, it is seen that east-west streets between Lovers Lane and University Boulevard and intersecting Inwood are Newmore, Glenwick (or Locksley) and Emerson; that the green and brown areas at Inwood and Lovers Lane, and eastwardly facing the latter street, constitute Inwood Shopping Village, a business and apartment section; that going south, east side, facing Inwood to University Boulevard, are seen the following types of improvement: Across Newmore (or Boaz) is Longfellow School; across Glenwick, the block is one-half two-story duplex, the other of single residential construction, and similarly as to the lots between Emerson and University Boulevard. Beginning at the latter street and on Inwood, west side, are six residences; then going north are seen the eight lots of Brazil Clesi where he resides and maintains a

[1] In reading this map, areas in green (or marked "G") refer to Local Retail 3 zoning; the orange (marked "O") to Duplex zoning; brown (marked "B") to A–1 zoning; white ("W") as R–7.5 single family residences of 7,500 sq. ft. up to 10,000 sq. ft.; the yellow ("Y") as shown, referring to defendants' lots covered by ordinance 5678 involved here.

nonconforming cold storage plant for use in his restaurant located elsewhere in the City of Dallas. Across Locksley (Glenwick), are the remaining 15 lots so rezoned; three owned by defendants, the others by persons who are neither parties to this suit nor appear as objecting to the ordinance in question. Across Newmore and facing Inwood to Lovers Lane are business structures beginning with an oil and gas station.

It is not disputed and in part stipulated that original restrictions relative to all lots in Lovers Lane Heights Addition limiting improvements thereon to single family residences expired in 1950; that in 1939 some 64% of property owners in the addition endeavored to extend said restrictions to the year 1965, but that said later covenants did not cover Lots 1 to 8, Block 16, belonging to B. Clesi; that, as already stated, the area was annexed to the City of Dallas and first zoned for residential use in 1941; also that when the Dallas Comprehensive Zoning Ordinance was re-enacted in September 1951, the then status of Lovers Lane Heights Addition as a residential area was continued.

Further stipulations of fact material to the controversy were entered into by the parties, the substance of which must here be stated: That over the past several years B. Clesi had made numerous applications to the Dallas Plan Commission and City Council seeking a change to Retail Zoning from the R–7.5 classification on Lots 1 through 8, Block 16, several of these applications likewise including his lots in Blocks 8 and 12, which were denied; that after a 1951 refusal, Clesi had brought suit in the District Court, contesting such adverse municipal action; the city answering the cause in allegations that "The property of the plaintiff is suitably situated for the purpose for which it is zoned * * *" (residential), which suit was later dismissed; that in July 1952, upon another application, the City Council overruled the City Plan Commission and recommended to Clesi a change of zoning to LR–3; which action was later rescinded, City Council referring the whole matter back to the Plan Commission for further study and recommendations; the latter body then disapproving a change to LR–3 uses; that hearings then began before the City Council, after which A–2 (apartment) usage was recommended by unanimous vote, which council action became the January 1953 Ordinance 5678, assailed as void and of no effect.

This ordinance is too lengthy for inclusion here; its caption in part reciting: "That a special permit shall be granted for Apartment–2 uses, save and except convalescent homes and old peoples' homes, with reference to the herein described property, subject, however, to the special conditions hereinafter more fully expressed; that the property shall be improved according to the plans and specifications submitted therefor and shall be approved by the City Plan Commission and the City Council; providing for a penalty; and declaring an emergency." Then follow express conditions in accordance with the City Zoning Code, Art. 165–22, which in turn provides: "(22). Where the City Plan Commission is considering a change in zoning from a residential or apartment zoning to a lower classification and the area in question involves three or more acres under one or more owners, or if it contains lesser area and would constitute the extension of an existing district whereby the provision of off-street parking facilities, screening walls, fences or planting and open space would create a protective transition between a lesser and a more restricted district, or if it would constitute the extension of an existing special permit, the City Plan Commission may, within its discretion, make the following recommendations to the City Council: (A) Recommend against the change in zoning. (B) Recommend a change in zoning. (C) Recommend that a special permit for such area be granted, together with its recommendations as to requirements for the paving of streets, alleys and sidewalks, means of ingress and egress to the public street, provisions for drainage, parking space and

street layouts, and protective screening and open space. (23) Every special permit granted under the provisions of this article shall be considered as an amendment to the zoning ordinance as applicable to such property. In granting such permit the City Council may impose conditions which shall be complied with by the grantee before certificate of occupancy may be issued by the building inspector for the use of the buildings on such property pursuant to said special permit; and such conditions shall not be construed as conditions precedent to the granting of the special permit or the change in zoning of such property, but shall be construed as conditions precedent to the granting of the certificate of occupancy." In the same connection Art. 165-31, captioned "Changes and Amendments," provides: "The governing body may from time to time amend, supplement, or change by ordinance the boundaries of the districts or the regulations herein established."

It was agreed that the area covered by ordinance 5678 was of more than three acres; that pursuant to an earlier bond issue, Inwood Road was widened in 1952, consisting of a six-lane divided highway; the ·traffic thereon between Lovers Lane and University Boulevard having doubled since 1948; that on Lovers· Lane at Inwood Road is a large shopping center of many commercial activities; in particular, dress and men's clothing shops, stores, such as liquor, shoe shops and repair, drugs, variety and general merchandise, cleaning and pressing, photographic, frozen food lockers, among other businesses, same extending to Newmore Street one block south; that there are practically no business structures, however, on Inwood Road south until Lemmon Avenue is reached, a distance of 1½ miles; that some of the plaintiffs reside on lots immediately to the rear and west of the lots covered by the amended ordinance; that the section known as Inwood Shopping Village and business surroundings have been developed since the particular area was annexed to the city; and that if real estate experts were called

on to testify concerning use of the involved lots, either for business or residential, there would be a reasonable dispute among them on the subject; some saying the lots were suitable for Apartment–2 purposes, others that they were not suited to such use or for business; and likewise, if individuals owning houses in the vicinity were called on to testify, they would say that residential values would be adversely affected by the rezoning of the subject lots for A–2 uses.

Some of the plaintiffs, testifying, stated that the rezoning of the Clesi lots would adversely affect values of adjoining property in the 'addition; Mr. Port Stages, living on Glenwick, two doors off Inwood Road, saying, however, that 2½-story apartment construction would be "acceptable," but still detrimental on account of resulting congestion. Anything over a six-unit apartment on each lot, he said, would congest the area; that the lots subject to damage by A–2 zoning of defendants' lots would be those which back up on the west and those lying immediately to the south; but that it was just ·a matter of individual opinion as to whether neighboring property would be damaged and how much.

Here it was stipulated that if eight other plaintiffs in the courtroom were called on to testify, they would say that they relied on the deed restrictions and zoning ordinance when purchasing their property in the area; knowing, however, that any zoning measure could be amended by recourse to lawful procedure.

M. R. Springer, head of City Plan's Engineering Department, called by plaintiffs, testified on cross-examination that the Clesi prior applications had been for LR–3 (local retail), which had been consistently refused; that defendants' last request for LR–3 zoning resulted in ordinance 5678, though the Plan Commission had recommended A–1 zoning for the subject property back in 1950, which had been rejected by the council; that acceptable zoning practice was to separate business from single family dwellings by an apartment or duplex area; that if the 23 lots were de-

voted to apartment usage, building height should be restricted to 2½ stories; and that a determination of proper zoning requires the exercise of discretion, "taking into consideration the use being made of adjacent property." It was apparent from the attitude of this witness in general that he did not agree with the City Council concerning amended ordinance 5678 and its advisability.

In numerous points, appellants argue validity of the ordinance in question, sufficiently presented in the following: "(4) The trial court erred in holding Ordinance No. 5678 to be void, since there was ample evidence to support the decision of the City Council of the City of Dallas in re-zoning by special permit the property in question. * * * (6) The trial court erred in granting a temporary injunction restraining the appellants from using their property for any purpose other than for single family residence purposes, since the governing body of the City of Dallas in the exercise of its discretion had concluded that such restrictions were not necessary in the exercise of its police power for the protection of the public health, safety and welfare, and which exercise of police power is the only legal justification for restricting the use of property by zoning. * * * (7) The act of the City Council in enacting Ordinance No. 5678 constituted a valid exercise of its police power, supported by disputable facts, and the trial court erred in substituting its discretion for that of the City Council in the exercise of a purely legislative matter." In turn, appellees advance a series of counter points here summarized: (1) Appellants not having requested findings of fact and of law, all issuable facts must be resolved in favor of the judgment rendered; (2) the hearing was interlocutory, invoking merely an exercise of the trial court's discretion, and no abuse thereof being shown, the grant of temporary injunction was proper; (3) the amended ordinance was void because (a) of noncompliance with specified procedural details, (b) was in contravention of deed restrictions covering a portion of the prop-

erty with result of "spot zoning," (c) no showing that the measure was promotive of the public health, safety or welfare, being apparently passed on the other hand for benefit of the individual defendants, (d) the council action in thus amending the ordinance was arbitrary and unreasonable, evidencing a clear abuse of legislative power.

By enactment of ordinance 5678 the City Council has simply decided that, in view of existing conditions, zoning restrictions covering the subject property should be relaxed to permit A–2 uses rather than R–7.5 as before; such enlarged uses to be controlled by "Special Permit" and appurtenant regulatory restrictions; for instance, with respect to contiguous lots owned by certain of the petitioners, "That a wall or fence and planting screen of sufficient density to serve as a visual barrier for the protection of abutting residential property owners shall be provided along the west and south boundaries of the tract." The controlling issue thus presented is whether such action was a valid exercise by the defendant city of its police power. Contrary thereto, it is the major contention of appellees that the questioned amendment, under an undisputed fact situation, is arbitrary and unreasonable; in no wise promotive of public welfare, interest or safety; the sole purpose and effect of which was enhancement of the Clesi property values. Quite relevant to these diverse positions are the following principles of law:

 (1) The same presumption of validity adheres to an amendatory measure as attaches to the original comprehensive ordinance of zoning; Weaver v. Ham, 149 Tex. 309, 232 S.W.2d 704; McQuillin, Municipal Corporations, 3d Ed., vol. 8, sec. 25.295; (2) while this presumption of validity of a zoning ordinance is rebuttable and subject to judicial review, interference by the courts is not justified except on a showing that the ordinance is clearly unreasonable and arbitrary, having no substantial relation to the public welfare;

City of West University Place v. Ellis, 134 Tex. 222, 134 S.W.2d 1038; (3) "The rule against judicial interference with zoning * * * is applicable with respect to the determination of zoning authorities that there has been a change of conditions to warrant rezoning." McQuillin, vol. 8, sec. 25.279; and their conclusions will not be disturbed if the question is fairly debatable. Sec. 25.281, same text; City of Dallas v. Lively, Tex.Civ.App., 161 S.W.2d 895, writ ref.; McNutt Oil & Refining Co. v. Brooks, Tex.Civ.App., 244 S.W.2d 872. "The courts will not set aside the municipality's classification if its validity is fairly debatable, but will do so only if its invalidity is clear. It is for the municipality to determine whether there has been such a change of conditions as to warrant a change in the zoning ordinances, but the conclusion that there has been such a change is subject to judicial review, although the municipality's determination will not be disturbed if the question is fairly debatable; it is only where the change is clearly unreasonable and arbitrary that the courts will interfere." 62 C.J.S., Municipal Corporations, § 228, page 561. (4) When the legislative body (municipal) determines in first instance that facts or conditions justify a particular classification, its judgment on that issue cannot be disturbed in absence of a clear showing of no reasonable basis therefor; the law delegating to city authorities and not to the courts the power and duty of determining the sufficiency of issuable facts in the exercise of a purely governmental function. Edge v. City of Bellaire, Tex.Civ.App., 200 S.W.2d 224, writ ref.

█ An application of these settled principles to the stipulated facts of this record is but to demonstrate the validity of the disputed ordinance. For it is there stated that if reputable men of real estate experience were to testify concerning the "use of this property for residences or for business, * * *; that there would be reasonable dispute by and between the real estate experts on this subject." Adaptability of the subject property to A–2 uses under the foregoing background constituting

at least a matter for debate, validity of the ordinance is by the same token established. "To sustain charges that the municipal judgment is arbitrary and unreasonable in its effect upon his property, ' * * * the extraordinary burden rests upon appellee to show that no conclusive, or even controversial or issuable, facts or conditions existed which would authorize the governing body of the municipality to exercise the discretion confided to it by a valid ordinance in determining a matter of purely governmental policy. * * *.' * * * And, 'If reasonable minds differ as to whether or not a particular restriction has a substantial relationship to the public health, safety, morals or general welfare, the restriction must stand as a valid exercise of the police power.'" City of Dallas v. Lively, Tex.Civ.App., 161 S.W.2d 895, 898.

But in event we be mistaken in the conclusions just reached, the further argument of appellees asserting invalidity of ordinance will be considered. They say that the amendment is condemned under the rationale of later cases, Davis v. Nolte, Tex.Civ.App., 231 S.W.2d 471, and Weaver v. Ham, 149 Tex. 309, 232 S.W.2d 704, 708; the last cited case emphasizing the rule that "The power to vary conditions of zoning ordinances should be sparingly exercised, and such power should be exercised only for the benefit of the public and with due regard for the preservation of the rights of others acquired under original zoning ordinances." They say that although vast changes have occurred in the whole area by way of business development since annexation of the addition and its zoning as residential in 1941, yet that when the Dallas Comprehensive Zoning Ordinance was re-enacted in September 1951, status of the involved lots continued as residential; and there having been no change in conditions affecting the subject property since 1951, the city's action in December 1952 resulting in Ordinance 5678 was patently unreasonable and arbitrary; having no relationship to the public welfare as was held in above cited and later decisions. Of these cases, we do not re-

gard Davis v. Nolte as involving a comparable fact situation; and in Weaver v. Ham there was no special permit contained in the San Antonio ordinance imposing further restrictions on the subject property (as in the instant case) that would tend to adequately protect abutting property owners from damage or harm incident to exercise of A–2 uses.

■■ Here it is proper to observe that the reasonableness and validity of an ordinance of zoning, likewise of whether the bounds of discretion have been exceeded by the municipality, must turn on the facts and circumstances of the particular case. McQuillin, Municipal Corporations, Vol. 8, 3d Ed., sec. 25.282, p. 537. "In any event," says McQuillin, sec. 25.68, "amendments to zoning ordinances should be made with utmost caution and only when changing conditions clearly require the amendment; otherwise, the very purpose of zoning will be destroyed. In short, a zoning ordinance can be amended only when the public interest requires it. But the determination of when the public interest does require an amendment is within the legislative discretion of the municipality."

■ Defendants, the Clesis, first applied for A–2 zoning late in 1952 (prior attempts being for local retail uses); in view of which we are not prepared to say that perforce of the September 1951 general re-enactment of the Dallas Comprehensive Zoning Ordinance, these lot owners were conclusively foreclosed from relying on the vast change of conditions since 1941 in support of their alleged right to a shift of restrictions from residential to A–2 zoning.

■ But aside from all other considerations, only those familiar with Inwood Road since its widening in 1952 can envisage the tremendously increased volume of traffic that has ensued; evidencing without more, such a change of conditions as to constitute a reasonable basis for the rezoning under attack. " 'The legislative body may determine in the first instance whether or not facts or conditions exist

warranting a classification; and its determination of that issue cannot be disturbed in the absence of a clear showing that there is no reasonable basis therefor.' " Edge v. City of Bellaire, supra [200 S.W. 2d 226].

■ Appellees advance further counter points' which we will consider briefly: (1) They argue that the amended ordinance directly conflicts with the 1939 deed restrictions heretofore mentioned, and hence violative of private contract. Whatever validity that may presently attach to these restrictions can no wise be affected by this ordinance. Spencer v. Maverick, Tex.Civ.App., 146 S.W.2d 819. It is also apparent that the injunction granted was not based on alleged restrictions by deed, since appellees do not claim that Lots 1–8, Block 16, were covered thereby. The situation thus remaining simply relates to a tract of more than three acres covered by ordinance No. 5678, authorizing A–2 uses under terms and conditions set forth in special permit, which, in turn, is authorized by the very comprehensive zoning ordinance that appellees rely upon. The result was a regulated apartment area serving as a buffer between a business and residential section; constituting good zoning practice even according to Plan Engineer Springer.

■ (2) Appellees' first counter point is sufficiently answered by our holding in City of Dallas v. Haworth, Tex.Civ.App., 218 S.W.2d 264, Syl. 1: "Where findings were substantially contained in judgment, failure of appellant to request and secure findings of fact did not create presumption that court found facts in such way as to support judgment." See also Warren v. Haverkorn, Tex.Civ.App., 191 S.W.2d 793. (3) In support of the judgment rendered, appellees insist that the hearing being in nature of a temporary injunction; the court action was one well within its discretion and an abuse thereof must be shown for reversal. But the foregoing general rule is inapplicable to a controversy where, as here, there is no material dispute concern-

ing the facts. Our problem simply involves the force and effect of these facts; the trial court concluding therefrom that the result was an invalid ordinance. Issuance of a temporary injunction is generally within the trial court's sound discretion *unless* the facts on which relief is sought present only questions of law. Tyree v. Road District No. 5, Tex.Civ.App., 199 S.W. 644, writ ref.; Kilburn v. Childers, Tex. Civ.App., 86 S.W.2d 832; Germany v. Pope, Tex.Civ.App., 222 S.W. 172.

■ And finally, the hearing already had, in nature and effect, may be viewed as tantamount to a final trial on the primary issue here, i. e., legal sufficiency of this ordinance. Pleadings of the parties in such respect were in extenso; the facts were exhaustively presented, 95% of which, as appellees' counsel frankly states, relates to undisputed matters; in other words, a fit subject for stipulation. Briefs of all parties, both original and in reply, were likewise voluminous and complete. On basis of a declared infirmity of ordinance, the trial court has here granted to appellees all the relief prayed for on final trial and we may assume a like disposition of the issue on a so-called trial to the merits. No useful purpose would be served by merely an order of remand on a fully developed question of law; and as in City of Dallas v. McElroy, Tex.Civ.App., 254 S.W. 599, we conclude that the instant disposition should be one of reversal and rendition, establishing validity of ordinance 5678.

The cause is accordingly reversed and judgment rendered dissolving the temporary injunction; without prejudice to petitioners' claim of deed restrictions on a trial to the merits.

Reversed and rendered in part; otherwise remanded to the trial court for further proceeding.

### On Rehearing

As appellees point out, application of the Clesis for rezoning which resulted in ordinance 5678 was not for A–2 uses under special permit. They had consistently requested a change to local Retail 3 (business), and the original opinion has been corrected accordingly. Again appellees argue with great earnestness that the City Commission is powerless to grant the change in question except in strict conformity with Art. 165–22, the zoning ordinance hereinabove quoted, unless initially considered by the City Plan Commission together with recommendations from that body; citing in support that part of Art. 165–22 reading: "The City Council of the City of Dallas may, after public hearing and proper notice to all parties affected, and, after recommendation from the City Plan Commission containing such requirements and safeguards as are necessary to protect adjoining property, authorize the location of any of the following in the specific districts:"

■ Otherwise stated, appellees question the authority of the City Council to amend the zoning ordinance, which amendment granted appellants a special permit applicable to the involved properties, because appellant property owners had petitioned for a general rezoning and had not asked for a special permit. Sec. 225 of the Dallas City Charter creates a City Plan Commission and under Art. 1011f, V.A.C. S., whenever a City Plan Commission exists, it may act and be designated as the Zoning Commission. Under both the Charter and above mentioned statute, the City Plan Commission, or Zoning Commission, acts merely in an advisory capacity by making recommendations to the City Council as to classification of property, uses, district boundaries, and other matters pertaining to zoning. This is necessarily so because the City Council and not the Plan Commission has authority to pass an ordinance prescribing zoning regulations, since all legislative matters are perforce of the law vested in the City Council.

■ Likewise any proposed amendment to the zoning ordinance is but a recommendation of the City Plan Commission,

which recommendation the council can adopt, reject, or revise, and enact such regulations as may be deemed proper. For example, under Art. 1011e, V.A.C.S., the City Council is given express authority to overrule the protest of neighboring property owners whose property is within 200 feet of property where zoning classification is to be changed, provided that three-fourths of the council vote for the change. Since an amendment to the zoning ordinance must be proposed and adopted with the same formality as the original ordinance, it clearly follows that under the facts of this case, where the recommendation of the Plan Commission was that zoning be not changed, still the council had the power to override the recommendation and grant the special permit upon conditions specified therein.

Nor in the situation presented is any requirement that a site plan be approved by the City Plan Commission in connection with grant of special permit; paragraph 4, Art. 165–22, making necessary a site plan *relating only* to private housing projects and shopping centers of not less than three acres. The case of Prince v. W. H. Cothrum & Co., Tex.Civ.App., 227 S.W.2d 863, involving a housing project, is therefore inapplicable. And as stipulated, A–2 uses include not only apartment but "boarding and lodging houses, kindergartens, private schools, hospitals, clinics, maternity homes, children's nurseries, hotels, motels, private clubs, lodges, fraternities, sororities and buildings up to six stories in height."

However, the fear of appellees that the rezoned property may be put to other uses such as six story buildings appears unwarranted in view of the limitations explicit in ordinance 5678, a condition being that the subject lots may be improved *only* according to plans and specifications submitted therefor, subject always to approval of the Plan Commission and City Council.

Upon careful study of the matters presented in above motion, the same is in all respects overruled.