**Dr. Bernard SCHNITZER et al., Appellants,**

v.

**SOUTHWEST SHOE CORPORATION,**
Appellee.

No. 15,946.

Court of Civil Appeals of Texas.

Dallas.

Jan. 26, 1962.

Rehearing Denied Feb. 23, 1962.

Saner, Jack, Sallinger & Nichols and Robert F. Ashley, Dallas, for appellants.

Rosenfield, Berwald & Mittenthal, Dallas, for appellee.

YOUNG, Justice.

The appeal is from grant of a temporary injunction. Upon filing of a $2,000 bond by appellee tenant, appellants were enjoined from forfeiting a lease on premises located on Garland Road, Dallas, for failure to pay rent to lessor Schnitzer, conditioned that appellee would make the payments into registry of court during pendency of suit. At request of appellants, it was ordered that the temporary injunction might be superseded by their filing supersedeas bond in sum of $10,000 which appellants did not furnish, but instead have filed a cost bond for appeal.

Appellants assert error of trial court in grant of the temporary restraint; (1) because the undisputed evidence shows that the defendants are able to respond in damages and that plaintiff has an adequate remedy at law; and (2) because plaintiff's petition showed on its face that plaintiff, is seeking to enforce the terms of an agreement which is void as in violation of the Anti-Trust Laws of the State of Texas. Appellee's answering points in substance are reflected in counterpoints three and four that "where the evidence showed that the appellants had breached a restrictive covenant in a lease contract, the trial court did not abuse his discretion in the grant of temporary injunction to preserve the status quo", and "that the terms of the restrictive covenant sought to be enforced was not in violation of Texas Anti-Trust Statutes."

Defendant Schnitzer and his father-in-law Sol Alpard were owners of adjoining

business buildings on Garland Road in a new area being developed as a shopping center. On January 14, 1959 Schnitzer had entered into a five-year lease and renewal option of his premises to appellee Southwest Shoe Corporation to be occupied as a shoe store, the consideration by lessee to be $39,000 payable $650 per month beginning July 1st, 1959. Said lease contained a provision that in case of default in performance thereof, same could be forfeited at discretion of lessor and lease declared at an end with repossession on terms then detailed. Paragraph #14 of the lease was a provision headed "EXCLUSIVE OCCUPANCY" and stipulating: "It is understood and agreed by the parties hereto that the LESSEE is to have an exclusive on the operation of a shoe store, and soft goods ready to wear store, subject to the hereinbelow exceptions, in this particular group or units of this shopping service center owned by the LESSOR and those joining him in the ratification of this exclusive occupancy throughout the primary term and option period of this lease:

"(1) Department store
"(2) Robert Hall Type Store
"(3) Mayfair Type Store
"(4) Children's Specialty Shop
"(5) Variety Store

Notwithstanding the above set forth exceptions to an exclusive shoe store and soft goods or ready to wear store, the LESSOR shall at all times have the exclusive right of sale in this shopping center of any and all shoes." At end of lease contract it was recited "Ratification of Exclusive Occupancy" signed by Sol Alpard and the instrument then being acknowledged by both defendants.

Defendants Schnitzer and Sol Alpard testified: The latter, that they owned both contiguous buildings, one of which Schnitzer had leased to appellee as above stated; that both were interested in development of the area as a shopping center and for

that purpose had entered into a common plan for its development; also that he was interested in protecting Dr. Schnitzer's tenants in their exclusive occupancy, it being for the interest of the whole center. Alpard had leased his adjoining premises to Lee Carpet Company and a few weeks after appellee had gone into possession of the lease, Lee Carpet Company with permission of Alpard had subleased a unit of same to Frank Green for conduct of an "outlet" or Army Store, engaged among other things in selling shoes. In this connection, Mr. Alpard testified that he had not consulted with appellee before giving Lee Carpet Company the written permission to sublease or notified Green, the subtenant, that he could not sell shoes as a part of his business operation, which admittedly he was doing. Concerning his solvency, this witness stated that it would take considerable time to list his properties, describing them generally but not as to any indebtedness against the same.

Dr. Bernard Schnitzer, defendant, likewise testified to the agreement with Alpard to operate their shopping center as one integral unit; that one of the conditions imposed by appellee was the covenant for exclusive occupancy and not to permit any tenant of the center to sell shoes other than lessee; that he had talked with Lee Carpet Company about the subletting, not advising Lee that he could not sublet to any one selling or offering to sell shoes on the premises. Schnitzer later received a letter from attorneys for appellee calling attention to the lease infraction, and requesting that the matter be corrected; he consulting Lee Carpet Company but could accomplish nothing; being otherwise disposed to release appellee from terms of his lease. Dr. Schnitzer testified that except for the temporary injunction he would have taken steps to forfeit appellee's lease; that it was not satisfactory for the monthly rentals to be paid into registry of court, he needing that money "to amortize my buildings"; his only property consisting of his home and business homestead.

Joseph Brown was president of appellee corporation. He testified to having been in the shoe business for many years, with six stores, and advertising extensively in newspapers and over the radio; that he was familiar with the value of an exclusive lease, it being his opinion that the reasonable value of the lease in question, if not an exclusive one, would be $350 per month, whereas he was obligated to pay $650 per month on basis that it was exclusive and that he would not have made the lease except for that reason; this same subtenant now selling certain brands of shoes handled by appellee and that the effect of such competition was to lessen plaintiff's sales; that he was one of the first tenants moving into the new shopping center which had possibilities of further expansion, he anticipating the option of renewal of lease for another five years; that appellee has paid his monthly rentals into registry of court and will continue to do so until final termination of suit.

While above résumé of material facts has required considerable detail, the restraint involved was simply a requirement that the monthly payments of rental be made into registry of court pending the litigation. During this interval and even under testimony of Dr. Schnitzer, appellee was entitled to protection of his lease against forfeiture; and at the same time defendant Schnitzer could have had the monthly rentals paid over to him direct by furnishing a supersedeas bond instead of the cost bond on appeal which he had chosen to file. So, far from constituting an abuse of discretion, the restraint imposed amounted to no more than maintenance of an appropriate status quo between the parties pending the instant controversy.

 Here the appellee has stated a cause of action, with damage of $150,000. Contrary to appellants' initial point, the evidence is not undisputed of the solvency of Dr. Schnitzer and therefore we disagree with his conclusion that appellee has an adequate remedy at law. In this connec-

tion it is stated in 28 Am.Jur. § 56, p. 554 that "insolvency necessarily aggravates the necessity for the protection of the plaintiff's right by injunction, and will often influence the court to grant an injunction. This does not mean, of course, that insolvency of the defendant is always an essential element of the equity entitling the plaintiff to injunctive relief, for the bill may have equity without regard to the solvency or insolvency of the defendant."

 In point two appellant attacks the restrictive covenant as a violation of the anti-trust statutes. At this juncture we are not concerned with that phase of such contractual provision. In Nelms v. Electro-Ball Co., 157 S.W.2d 681 decided by this Court, a like point was raised by defendant on his appeal from grant of temporary injunction. Judge Looney there stated: "When the case is tried on its merits, in view of the provisions of the statute against trusts and conspiracies against trade, we think it obvious that the decision will largely turn on the legality, whether or not, of the exclusive contracts under which appellee operates. We are not required to, nor do we, pass upon that question on this appeal, as the only question presented now is whether or not the court below abused its discretion in granting the temporary injunction, the office of which being simply to maintain the status quo and not to grant relief properly obtainable on final trial."

Consistent with the conclusions above expressed, judgment of the District Court is in all respects affirmed.

## ON REHEARING

Appellants complain of our failure to dispose of their point two—that, after all, the restrictive covenant was in violation of Texas Anti-Trust laws. While this defense was pled neither party offered any evidence with respect to same; treating it in our view as an issue to be disposed of on final trial. We therefore followed Nelms v. Electro-Ball Co., Tex.Civ.App., 157 S.W.2d 681 instead of Clesi v. Northwest Dallas

Imp. Ass'n, Tex.Civ.App., 263 S.W.2d 820 where evidence was developed on all issues presented. As appellee observes, whether or not there has been a violation of the Anti-Trust laws raises a question of fact relative to whether the covenant in question tends to unreasonably stifle competition.

The motion is overruled.